BUCZKOWSKI v McKAY

Docket No. 89770. Argued January 7, 1992 (Calendar No. 4). Decided
September 29, 1992. Rehearing denied *post,* 1202.

Anthony Buczkowski brought an action in the Wayne Circuit
Court against Walter W. McKay and Frederick T. Patton,
seeking damages for injuries suffered when McKay intention-
ally shot at Buczkowski's parked truck and the shot ricocheted
off the wheel of the truck and struck him. K mart later was
added as a defendant under a negligent entrustment theory
because it sold shotgun slugs to McKay while he was intoxi-
cated. The court, James Hathaway, J., entered judgment on a
jury verdict for the plaintiff, finding that K mart's internal
policy not to sell ammunition to intoxicated customers was
sufficient evidence to impose a legal duty. The Court of Ap-
peals, SAWYER, P.J., and MICHAEL J. KELLY and R. B. BURNS,
JJ., affirmed in part and reversed in part in an unpublished
opinion per curiam, concluding that a retailer of a product
owes a duty of due care to a bystander affected by the product
(Docket No. 113420). K mart appeals.

In an opinion by Justice BOYLE, joined by Justices LEVIN,
BRICKLEY, RILEY, GRIFFIN, and MALLETT, the Supreme Court
*held:*

Because the product sold was neither defective nor inher-
ently dangerous, and because the Legislature has not defined a
class of purchasers who may be deemed legally incompetent to
buy ammunition, K mart had no legal duty to protect the
plaintiff, a member of the general public, from the intentional
criminal act of McKay.

1. Whether a retailer has a duty to protect a member of the
general public from the criminal act of a customer depends on
the relationship between the parties, the nature and foresee-
ability of the risk, and other relevant considerations. The issue
in this case is not whether it is foreseeable that an intoxicated
customer might injure another with a nondefective product, but
whether a retailer in the setting presented should be held
liable for the failure of a clerk to foresee a customer's criminal
purpose.

2. The marketing of ammunition itself is not inherently
dangerous, and policy considerations underlying its regulation

are within the purview of the Legislature. In this case, there was no statutory violation in the sale of the ammunition, or any evidence demonstrating that McKay acted in a threatening manner or was legally incompetent. Thus, K mart had no duty to inquire into the intended use of the product McKay was lawfully entitled to purchase.

Chief Justice CAVANAGH concurred in the result only.

Reversed and remanded.

*Thomas, Garvey, Garvey & Sciotti* (by *Robert F. Garvey*); *Bendure & Thomas,* of counsel (by *Mark R. Bendure*), for the plaintiff.

*Michael E. Thoits* for defendant McKay.

*Bodman, Longley & Dahling* (by *Theodore Souris* and *Robert G. Brower*) for defendant K mart.

Amici Curiae:

*Mark Granzotto* and *Charles P. Burbach* for Michigan Trial Lawyers Association.

*Gerald H. Acker, Dennis A. Henigan,* and *Judith Bonderman* for Center to Prevent Handgun Violence Legal Action Project.

*Monica Farris Linkner* for Save our Sons and Daughters.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Robert W. Powell*) for Michigan Defense Trial Counsel.

BOYLE, J. We granted leave in this case to determine whether to impose a duty on a retailer to protect a bystander injured by the use of shotgun ammunition it sold to defendant McKay while McKay was intoxicated, and whether the sale of the ammunition was a proximate cause of the plaintiff's injury. Because the product sold was

neither defective nor inherently dangerous, and because the Legislature has not defined a class of purchasers who we may deem legally incompetent to buy ammunition, we find that the retailer did not have a legal duty to protect plaintiff, a member of the general public, from the criminal act of the defendant. Because we find no antecedent legal duty, we need not reach the issue of proximate cause. Accordingly, we reverse the decision of the Court of Appeals and remand the case to the trial court with directions that it enter judgment in favor of defendant K mart.

I

Plaintiff was injured by a shotgun slug intentionally fired by William McKay that ricocheted off the plaintiff's parked vehicle. The ammunition was fired from McKay's shotgun several hours after the time of the purchase, and many miles away from the retailer's premises. McKay testified that he had engaged in a day-long drinking spree and could not remember the gender of the sales clerk and could not identify the box of shells he purchased. He testified that he remembered retrieving the shells from a self-serve shelf at K mart and purchasing them without speaking to anyone. He did not recall if he showed any signs of intoxication, but assumed he looked a mess after his day-long beer-drinking activities.

McKay spent the next several hours drinking and at approximately 10:45 P.M., drove to the Buczkowski home intending to shoot out the back window of the plaintiff's parked truck. He fired one shot which ricocheted off the wheel of the truck and struck Buczkowski, who happened to be in his back yard at the time. Plaintiff sustained injuries to his hands and eventually had his right

ring finger amputated and his left wrist surgically fused.

A jury awarded Buczkowski $1.5 million in damages. Defendant K mart's motions for summary disposition, directed verdict, and judgment notwithstanding the verdict were denied. At trial, the court found that K mart's internal policy of not selling ammunition to intoxicated customers was sufficient evidence to impose a legal duty on the retailer.[1]

The Court of Appeals concluded that a retailer of a product owes a duty of due care to a bystander affected by that product and that it is for the jury to determine whether the retailer created an unreasonable risk of harm. With regard to the issue of proximate cause, the Court found that McKay's conduct was foreseeable and, therefore, that the issue was properly submitted to the jury. Finally, the panel reversed the trial court's order denying defendants' motion for remittitur and remanded the matter to the trial court for reconsideration of that motion in light of this Court's recent decision on the issue in *Palenkas v Beaumont Hosp*, 432 Mich 527; 443 NW2d 354 (1989). Unpublished opinion per curiam of the Court of Appeals, decided July 23, 1990 (Docket No. 113420).

We granted leave to appeal limited to the issues whether K mart owed a duty to protect Buczkowski when it sold shotgun ammunition to McKay while McKay was intoxicated, and whether the sale of the ammunition was the proximate cause of plaintiff's injury. 437 Mich 1035 (1991).

---

[1] We disagree with the trial court. Imposition of a legal duty on a retailer on the basis of its internal policies is actually contrary to public policy. Such a rule would encourage retailers to abandon all policies enacted for the protection of others in an effort to avoid future liability.

II

The plaintiff claims an interest in being free from the injury that resulted from the criminal misuse of a product sold by K mart to an allegedly incompetent customer.[2] For the reasons stated below, we find that it did not.

A

For purposes of this case we distinguish between duty as the problem of the relational obligation between the plaintiff and the defendant, and the standard of care that in negligence cases is always reasonable conduct. Thus, the duty to use "reasonable care" is the standard for liability rather than the antecedent conclusion that a particular plaintiff has protection against a particular defendant's conduct, or that a particular defendant owes any specific duty to a particular plaintiff.[3] Duty is actually a " 'question of whether the defendant is under any obligation for the benefit of the particular plaintiff' and concerns 'the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other.' " *Friedman v Dozorc,* 412 Mich 1, 22; 312 NW2d 585 (1981); Prosser & Keeton, Torts (5th ed), § 53, p 356. " 'Duty' is not sacrosanct in itself, but

---

[2] The plaintiff's theory of recovery is negligent entrustment, 2 Restatement Torts, 2d, § 390, p 314, which provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

[3] Green, *The duty problem in negligence cases,* 28 Colum L R 1014, 1025 (1928).

is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Id.,* p 358. See also *Friedman v Dozorc, supra,* and *Antcliff v State Employees Credit Union,* 414 Mich 624, 631; 327 NW2d 814 (1982).[4]

Courts take a variety of approaches in determining the existence of a duty, utilizing a wide array of variables in the process. Frequently, the first component examined by the court is the foreseeability of the risk. However, other considerations may be, and usually are, more important. For example, in *Samson v Saginaw Professional Bldg, Inc,* 393 Mich 393, 406; 224 NW2d 843 (1975), we stated:

> [T]he mere fact that an event may be foreseeable does not impose a duty upon the defendant to take some kind of action accordingly. The event which he perceives might occur must pose some sort of risk of injury to another person or his property before the actor may be required to act. Also, to require the actor to act, some sort of relationship must exist between the actor and the other party which the law or society views as sufficiently strong to require more than mere observation of the events which unfold on the part of the defendant. It is the fact of existence of this relationship which the law usually refers to as a duty on the part of the actor.[5]

[4] Dean Prosser described the several variables that consistently go to the heart of a court's determination of duty as including: foreseeability of the harm, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and, finally, the burdens and consequences of imposing a duty and the resulting liability for breach. Prosser & Keeton, § 53, p 359, n 24. See also Green, n 3 *supra,* and Green, *The duty problem in negligence cases: II,* 29 Colum L R 255 (1929); Green, *Duties, risks, causation doctrines,* 41 Tex L R 42 (1962); Thode, *Tort analysis: Duty-risk v proximate cause and the rational allocation of functions between judge and jury,* 1977 Utah L R 1.

[5] Justice LEVIN, in his dissenting opinion in *Samson v Saginaw*

Where foreseeability fails as an adequate template for the existence of a duty,[6] recourse must be had to the basic issues of policy underlying the core problem whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.[7] Justice TALBOT SMITH incisively described the duty inquiry and its relationship to foreseeability:

*Professional Bldg, Inc, supra* at 419-420, framed the analysis as:

> [T]he duty question turns on policy considerations: "whether one owes a duty of protection to another is ultimately a question of fairness." . . . "The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution."

In *Rodriguez v Sportsmen's Congress,* 159 Mich App 265, 270-271; 406 NW2d 207 (1987), the Court of Appeals framed the duty inquiry as:

> The determination of whether a legal duty exists is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor's part to act for the benefit of the subsequently injured person. . . . Thus, the determination of whether a duty should be recognized in any individual case is based on a balancing of the societal interest involved, the severity of the risk, the burden upon the defendant, the likelihood of occurrence and the relationship between the parties.

Other jurisdictions have expressed reasoning about duty similar to that of our own jurisprudence.

[6] The Rhode Island Supreme Court, in *D'Ambra v United States,* 114 RI 643, 650-652; 338 A2d 524 (1975), stated that duty is a composite of many factors, and foreseeability is responsive only to the moral aspects of the issue.

[7] The Supreme Court of Wisconsin, addressing the negligence duty dilemma in *Waube v Warrington,* 216 Wis 603, 613; 258 NW 497 (1935), reasoned:

> The answer to this question cannot be reached solely by logic, nor is it clear that it can be entirely disposed of by a consideration of what the defendant ought reasonably to have anticipated as a consequence of his wrong. The answer must be reached by balancing the social interests involved in order to ascertain how far defendant's duty and plaintiff's right may justly and expediently be extended.

[T]he legal problem in this case . . . involves not hindsight but foresight, the problem of "duty." Was [the] action foreseeable by . . . the defendants here? Of course not . . . . Nevertheless, will we *say* that it was? A court can, of course, always simply hang its hat on the wall and say that anyone can foresee anything, for example here, specifically, that Gordon would commit a crime . . . . But this is purely fictional. . . . It is my opinion that a modern court, if it is to employ fictions, should state frankly the considerations of policy justifying the result ordained by the fiction . . . . [*May v Goulding,* 365 Mich 143, 155- 156; 111 NW2d 862 (1961) (SOURIS, J., dissenting and adopting Justice SMITH's opinion as his own). Emphasis in original.]

Whether a retailer has a duty to protect a member of the general public from the criminal act of a customer depends on the relationship between the parties, the nature and foreseeability of the risk, and any other considerations that may be relevant on the issue.[8]

B

Our ultimate decision turns on whether a sufficient relationship exists between a retailer and a third party to impose a duty under these circumstances. The duty to protect others against harm from third persons is based on a relationship between the parties. Prosser & Keeton, § 56, p

---

[8] The Court of Appeals and the plaintiff primarily relied on *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), to support a finding of duty. In *Moning,* a majority of the justices participating held that placing a product on the market creates a duty relationship between retailers and persons affected by use of the product. *Moning* is distinguishable; it involved children as the targeted customers for the marketing of slingshots, a class historically protected under the law of torts.

385.[9] The relationship in this case is simply that of retailer and customer, where the customer later criminally injured an innocent bystander using a product purchased from the retailer that was neither defective nor inherently dangerous.[10] The plaintiff claims that it is reasonably foreseeable that an intoxicated person will use ammunition to injure another person. However, the plaintiff has not alleged that the defendant marketed ammunition to a known criminal, and the customer here intentionally and criminally shot at the plaintiff's vehicle and injured the plaintiff. Thus, while it may be acknowledged that many criminal acts are committed by persons under the influence of intoxicants, the issue here is not whether it is foreseeable that an intoxicated customer may injure another with a nondefective product, but whether a retailer in the supermarket setting presented should be liable for a clerk's failure to foresee a customer's criminal purpose. Recognizing such a

[9] The present case does not illustrate a special relationship, where one entrusts himself to the protection of another and relies upon that person to provide a place of safety, e.g., landlord-tenant, innkeeper-guest, common carrier-passenger. *Williams v Cunningham Drug Stores,* 429 Mich 495; 418 NW2d 381 (1988); Prosser & Keeton, § 56, p 383. Nor is this a case of special circumstance where the defendant had knowledge of the assailant's dangerous propensities or control of the premises. *Samson v Saginaw Professional Bldg, Inc, supra;* Small, *The landowner/occupier's duty to prevent assaults by third parties,* 68 Mich B J 32 (1989). It is also not a case where the custodial circumstances involved imposed a duty to protect the individual against his own propensities. *Hickey v Zezulka,* 439 Mich 408; 487 NW2d 106 (1992); *York v Detroit (After Remand),* 438 Mich 744; 475 NW2d 346 (1991). Finally, this is not a products liability claim where an innocent bystander was injured by a defective product. *Piercefield v Remington Arms Co, Inc,* 375 Mich 85; 133 NW2d 129 (1965); *MacPherson v Buick Motor Co,* 217 NY 382; 111 NE 1050 (1916).

[10] *Piercefield* and *MacPherson,* n 9 *supra,* involved manufacturer liability when defectively made products foreseeably injured innocent bystanders. Imposing a duty of safety upon retailers and manufacturers to persons injured by the use or misuse of a product sold, without regard to the type of product or whether it was defective, is in effect, absolute liability; a concept rejected by this Court in *Prentis v Yale Mfg Co,* 421 Mich 670, 682-683; 365 NW2d 176 (1984).

duty would place on the retailer a duty to discover each customer's fitness to purchase any product that could conceivably harm unknown third parties.[11] As Justice SMITH said, "[w]as [the result] foreseeable . . . ? Of course not . . . ." *May v Goulding, supra* at 155. To say that a duty should be imposed here because the harm was foreseeable is a fiction that obscures the policy inquiry. The result here was no more foreseeable than the potential harm from any product sold to an apparently inebriated customer that might be used to injure third parties. We therefore turn to the question whether this Court will "[n]evertheless . . . *say* that it was [foreseeable]," and examine the policy considerations that affect our decision to impose a duty in this case.

The plaintiff argues that ammunition is an inherently dangerous product and that the policy reasons for regulation of firearms are equally ap-

---

[11] In *Fredericks v General Motors Corp,* 411 Mich 712, 719; 311 NW2d 725 (1981), we held:

> To sustain a cause of action for negligent entrustment a plaintiff must prove that defendant knew or should have known of the unreasonable risk propensities of the entrustee. . . . *To prove an entrustor should have known an entrustee was likely to use the entrusted chattel in an unsafe manner, peculiarities of the entrustee sufficient to put the entrustor on notice of that likelihood must be demonstrated.* [Emphasis added.]

In the instant case, the risk of harm was the intentional criminal misuse of shotgun ammunition. However, the only evidence presented at trial from which an inference that the retailer had notice McKay was so intoxicated that harm to others was foreseeable was McKay's testimony that he entered the store alone, retrieved the ammunition from a self-serve shelf, and proceeded to the sales counter where he paid for the shotgun ammunition without difficulty. Although McKay was unable to recall the gender of the sales clerk, he did remember that he did not speak to the clerk and that the clerk did not ask him any questions. McKay did not know if he showed any visible signs of intoxication while inside the store. Nevertheless, McKay assumed he must have looked a mess because of his day-long beer-drinking activities, evidence that seems to fall short of that which would make a check-out clerk aware of the peculiarities of the entrustee.

plicable to ammunition sales. However, the marketing of ammunition is not itself an inherently dangerous activity, and the policy considerations underlying regulation of the sale of firearms, like that of liquor, are quintessentially within the legislative arena. We are persuaded, therefore, by the rationale underlying the decisions of courts that have refused to hold firearms manufacturers and retailers liable for the criminal acts of their customers, absent violation of a state or federal firearm statute.[12]

In *King v R G Industries,* 182 Mich App 343; 451 NW2d 874 (1990), the Court of Appeals noted that the Legislature has enacted many statutes regulating the use of firearms, ranging from banning certain weapons to requiring registration, and declined to interfere with the Legislature's exercise of authority in this area. Writing for a unanimous panel, Judge SHEPHERD explained:

> There are numerous policy arguments both for and against the regulation of firearms . . . . These arguments involve economic, political, and philosophical considerations, including whether placing the economic burden of crime on those who market a product that may lawfully be sold is likely to have a substantial impact on crime. In some analo-

---

[12] Accord *Delahanty v Hinckley,* 564 A2d 758 (DC App, 1989), a suit against a handgun manufacturer by persons injured in an attempted assassination of the President. Reviewing the various tort allegations made by the plaintiffs, the District of Columbia Court of Appeals found that there could be no product defect claim because the gun functioned exactly as it was supposed to. There was no duty to warn because the hazards of firearms are obvious. The court also rejected the plaintiffs' argument that an inherently dangerous instrument, such as a handgun, has no social value, finding that the marketing of a handgun is not dangerous in and of itself. The court went on to say that when injury occurs, it is not the direct result of the sale itself but, rather, the result of actions taken by third parties. Finally, the court in *Hinckley* noted that all firearms are capable of being used for criminal activity and imposing liability upon handgun manufacturers will not avoid that basic fact.

gous situations similar issues have been resolved against the merchants, e.g., sales of intoxicating beverages to visibly intoxicated persons . . . . However, in that situation the matter was resolved by the Legislature. We believe that body is the more appropriate forum in which to settle such questions. [*Id.* at 345.]

Claims against retailers for a customer's criminal misuse of a firearm have been recognized where the seller violated a state or federal firearm statute. In those cases, courts reason that where a legislature identifies certain classes of persons as incompetent to possess weapons, it is foreseeable that such persons will commit crimes if allowed access to weapons in violation of the statute.[13] Nevertheless, beyond the class defined by statute,[14]

---

[13] See for example *Huddleston v United States,* 415 US 814, 824-825; 94 S Ct 1262; 39 L Ed 2d 782 (1974), *Decker v Gibson Products Co,* 679 F2d 212 (CA 11, 1982), *K mart v Keller,* 439 So 2d 283 (Fla App, 1983), rev den 450 So 2d 487 (1984), and *Bernethy v Walt Failor's, Inc,* 97 Wash 2d 929; 653 P2d 280 (1982) (borrowing the statute and policy against selling handguns to intoxicated purchasers and applying to other firearms).

[14] We have found only two cases that address negligence claims arising solely from the sale of ammunition. In *Schmit v Guidry,* 204 So 2d 646 (La App, 1967), a fourteen year old purchased shotgun shells from a store and later shot another boy. The state statute in question prohibited sales to minors of any firearms or other instrumentality customarily used as a dangerous weapon. A Louisiana appellate court declined to impose a legal duty under the statute, finding that a shotgun shell was not a firearm, nor could it be used as a dangerous weapon. With regard to the negligence claim, the court also refused to impose a duty stating that a fourteen year old is not too young to know the character of shotgun shells, nor was he so young that the seller knew or should have known the boy was incapable of taking proper care of the shells. In the second case, *Bryant v Winn-Dixie Stores, Inc,* 786 SW2d 547 (Tex App, 1990), cert den 498 US 1126; 111 S Ct 1090; 112 L Ed 2d 1194 (1991), a Texas Court of Appeals panel affirmed a grant of the defendant's motion for summary judgment after it found no statutory violation or negligence when the store sold ammunition to a former mental patient who later murdered four people. Addressing the negligence claim, the court held that the retailer had a duty only of ordinary care and had no duty to inquire into the competence of the purchaser where the clerk had not observed anything unusual about the customer.

there is no duty owed by the retailer to discover other potential incompetent persons or foresee the criminal acts of others absent special circumstances.[15]

Ultimately, whether we should impose a duty on the defendant in this case despite the actual lack of foreseeability turns on whether as a matter of policy K mart should bear the burden of plaintiff's loss. We are persuaded that the fiction of foreseeability should not be imposed on the sellers of ammunition. The likely result will be to make such products unavailable to law-abiding users, or to raise the price of a multitude of potentially harmful products as sellers redistribute the cost of potential liability to all consumers. Moreover, because it is unlikely that placing the economic burden of crime on the defendant will have "a substantial impact on crime," *King, supra* at 345, the only reason for fictional foreseeability is shifting the burden of plaintiff's loss. This concern in context does not overcome the policy considerations articulated by Judge SHEPHERD that apply even more forcefully to the sale of ammunition.[16]

---

[15] See Prosser & Keeton, § 36, p 233; *Hetherton v Sears, Roebuck & Co*, 593 F2d 526 (CA 3, 1979); *Bennet v Cincinnati Checker Cab Co, Inc*, 353 F Supp 1206 (ED Ky, 1973); *Trespalacios v Valor Corp of Florida*, 486 So 2d 649 (Fla App, 1986); *Hulsman v Hemmeter Development Corp*, 65 Hawaii 58; 647 P2d 713 (1982); *Robinson v Howard Bros of Jackson, Inc*, 372 So 2d 1074 (Miss, 1974).

[16] There is no evidence or testimony in this record demonstrating that any K mart employee had actual notice that McKay displayed abnormal behavior while inside the store. Absent evidence to the contrary, the retailer was entitled to proceed on the assumption that the purchaser would obey the criminal law. Prosser & Keeton, § 33, p 201. Imposing a duty on a retailer to protect members of the general public from the criminal misuse of the products it sells also implicates the economic repercussions of protecting bystanders from "defective" customers, *Horne v Vic Potamkin Chevrolet, Inc*, 533 So 2d 261 (Fla, 1988). The creation of such a duty effectively requires independent investigation to establish each buyer's fitness to use each product, leaving negligent commercial transactions open to unlimited expansion tantamount to imposing a fiduciary duty on the retailer for the

The type of ammunition sold in this case apparently carries the absolute minimum regulation by both federal and state statutes that the purchaser be eighteen years of age,[17] a requirement that McKay met. Finding no statutory violation or any evidence demonstrating that McKay acted in a threatening manner or was legally incompetent, we decline to impose a duty on K mart to have inquired into McKay's intended use of a product he was lawfully entitled to purchase.

Accordingly, we reverse the decision of the Court of Appeals and remand to the trial court with directions that it enter judgment in favor of defendant K mart.

LEVIN, BRICKLEY, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.

CAVANAGH, C.J., concurred in the result only.

benefit of unknown third parties. Note, *The negligent commercial transaction tort: Imposing common law liability on merchants for sales and leases to "defective" customers,* 1988 Duke L J 755, 781-782.

[17] See 18 USC 922(b)(1); MCL 3.111, 3.112; MSA 4.127(1), 4.127(2), MCL 28.421 *et seq.*; MSA 28.91 *et seq.*