45 F.3d 431
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Michael THEEKE; Peggy Theeke, Plaintiffs-Appellees,
v.
BASF CORPORATION, Defendant-Appellant.
 No. 93-2193.
 United States Court of Appeals, Sixth Circuit.
 Dec. 29, 1994.
 
 Before: ENGEL, MARTIN, and BOGGS, Circuit Judges.
 ENGEL, Circuit Judge.
 
 
 1
 Defendant BASF appeals a judgment entered in favor of Michael and Peggy Theeke in their Michigan diversity suit for damages arising when Michael applied a welding torch to a metal container, or "tote," owned and delivered by BASF to Theeke's employer for repair and cleaning. The tote contained fumes which caused it to explode. A jury found that the proximate cause of Theeke's resulting injuries, assessed at $620,000, was the negligence of both BASF and Theeke, with Theeke being 40% at fault. Under Michigan's comparative negligence doctrine, the trial court reduced the Theekes' damages by 40% to $363,523.10 net and entered judgment against BASF in that amount. BASF appeals. We affirm.
 
 
 2
 BASF manufactures paint which it transports in large metal boxes called "totes." Totes' contents are often flammable and toxic. Before a tote can be reused, it must be thoroughly cleaned and, if damaged, repaired. Michael Theeke worked as a welder for Tote Services, a company which specialized in cleaning and repairing totes for BASF and others. BASF delivered to Tote Services one tote which had been out of service for several years. No warning label of any sort appeared on the tote, which like other totes had a lid at the top and a small valve at the bottom. Because its lid was rusted shut, the tote was delivered to the repair area, where on February 1, 1990, Michael Theeke worked on it. First he noted the absence of the customary "Flammable" sticker on it, and then he attempted to determine whether a flammable liquid or vapor was present in the tote by giving it a perfunctory and ineffective "sniffing" test. Theeke described his actions:
 
 
 3
 Well, like I said. The first step I went through I checked to see if there was any flammable stickers on it. I made a visible inspection on the inside of the tank to see if there was any paint or liquid in the tank. And, third, I did the air and smell test.
 
 
 4
 Appendix at 610. Concluding that the tote contained nothing flammable, he then attempted with his welding torch to remove the rusted lid. The tote exploded, presumably because flammable vapors, which were present in the tote after all, ignited. Theeke does not challenge the jury's finding that he was 40% at fault for the explosion. In retrospect at least, he should have investigated more carefully or used a less potentially combustible way of prying open the lid.
 
 
 5
 The principal issue BASF raises is whether under Michigan law it had a duty to place a warning sticker upon the tote and whether such a failure, with Theeke's own contributory negligence, could be found by a jury to be a proximate and legal cause of his injuries. To determine whether a party has a duty to warn, the Michigan Supreme Court has emphasized the relationship of the parties, the nature and foreseeability of the risk and any other relevant considerations. Buczkowski v. McKay, 441 Mich. 96, 490 N.W.2d 330, 334 (1992). BASF contends that it owed no duty as a matter of Michigan law and that even if it might owe such a duty, the jury's conclusion that it did is against the weight of the evidence. BASF also complains of several errors in the trial which entitled it, at the very least, to a new trial. We cannot agree.
 
 
 6
 BASF argues that as a matter of law it owed no duty to warn because Tote Services and Theeke were "sophisticated users" with equal awareness of the risks. It cites a recent Michigan Court of Appeals decision holding that manufacturers are legally absolved "in some circumstances of the duty to warn the users of chemical products, where such use is in the course of employment for a sophisticated bulk user," Aetna Casualty & Surety Co. v. Ralph Wilson Plastics Co., 509 N.W.2d 520, 524 (Mich.Ct.App.1994). We do not believe that Tote Services and Theeke are sophisticated bulk users, but in any event, this legal doctrine is inapplicable to the facts of this case. By its own acts, BASF altered the relationship it had with Tote Services to make Tote Services dependent upon BASF's labelling of hazardous totes.
 
 
 7
 A full two years before the accident, contractors engaged to clean dirty totes were complaining to BASF that they had no way of knowing what a given tote might have previously contained. This was critical because working on a tote which had contained explosive material was entirely different from working on one which did not. Moreover, BASF was the best party to discover the previous use of its totes. Accordingly, on August 9, 1988, Allen Kinsler, BASF Ecology Coordinator and Senior Project Engineer, circulated to "all employees" and to Tote Services a notice, which ordered in part:
 
 
 8
 EFFECTIVE IMMEDIATELY, ALL CONTAINERS USED TO HOLD HAZARDOUS MATERIALS MUST BE STENCILED WITH CODES USED TO IDENTIFY THE CONTENTS....
 
 
 9
 Labeling will include: ...
 
 
 10
 2. Hazard stickers, such as "Flammable" stickers for flammable materials, for DOT [Department of Transportation] purposes.
 
 
 11
 Appendix at 326. Accompanying the notice was a more extended interoffice memorandum citing a recent incident at Midwest Waterblasting, who also cleaned totes for BASF, and emphasizing the need for the new rules.
 
 
 12
 Currently there are totes in use in the plant without any markings for the contents, with raw materials, being staged with only the finished product code, and are [sic] being shipped with residues without required DOT Hazard Labels....
 
 
 13
 To remedy these problems, I am specifying the following:
 
 
 14
 1. All containers used for hazardous materials must be labeled with DOT Hazard labels at the time of the beginning of use ...
 
 
 15
 As an intermediate step, I have asked [another BASF employee] to inspect all totes leaving the plant, and to send only those with recognizable contents and DOT labels.... If we can institute this program successfully, we can avoid many liabilities and violations in the future.
 
 
 16
 Appendix at 328-29.
 
 
 17
 BASF claims that it was error to introduce into evidence the two exhibits and the label, particularly the exhibits' references to state and federal regulations. The regulations and statutes were not intended to protect any group which included Theeke, so "violation of the statute is neither negligence per se nor even evidence of negligence, and can have no effect on liability at all." Williams v. Hill Mfg. Co., Inc., 489 F.Supp. 20, 22 (D.S.C.1980).
 
 
 18
 We disagree. Theeke did not use the sticker as evidence of a statutory requirement or violation. In fact, the court instructed the jury that "... BASF is not required by statute or regulation to place a red flammable sticker on totes."
 
 
 19
 Having given such an instruction, BASF says, the game was over and it wins, for in Michigan as nearly everywhere, the existence of duty in tort cases is a matter of law for the court. But as we have seen this is not all that happened. The stickers were relevant because BASF had told Tote Services that BASF would place them on totes containing flammable chemicals, such stickers were routinely placed on totes with hazardous vapors, and no such sticker was on the tote that exploded. The fact--unknown to the jury--that the stickers were also mandated by inadmissible regulations became irrelevant.
 
 
 20
 BASF further claims that the memorandum sent by BASF to Tote Services detailing BASF's labelling process was improperly admitted. BASF claims that its policy was designed to comply with the inadmissible regulations and statutes. Again, BASF's motivations and the statutes are equally irrelevant. The memorandum was properly introduced to demonstrate that for whatever reason, BASF caused Tote Services to rely upon the labels in handling BASF's totes.
 
 
 21
 BASF correctly points out that the Michigan Supreme Court has ruled that "imposition of a legal duty on a retailer on the basis of its internal policies is actually contrary to public policy. Such a rule would encourage retailers to abandon all policies enacted for the protection of others." Buczkowski v. McKay, 441 Mich. 96, 490 N.W.2d 330, 332 n. 1 (1992). However, by communicating to Tote Services its intention to label all hazardous totes as "FLAMMABLE," however, and causing Tote Services to rely on its policy, BASF changed their relationship and expectations. Upon communication, the policy ceased to be "internal."
 
 
 22
 BASF lastly attacks the jury instructions regarding proximate cause as inadequate and confusing. This claim is without merit. While BASF offered more specific jury instructions at trial, the district court acted within its proper discretion in refusing them and using instead the standard Michigan jury instruction on proximate cause. Although proximate cause as a legal issue can be very complex and confusing, this case is not a particularly thorny example of proximate cause.
 
 
 23
 We must assume that if the jury could properly determine these issues, then the jury was properly instructed, for no specific error in the instruction is raised on appeal. Certainly no error has been pointed out to us and we are not inclined to pick an independent quarrel with what we know about them. The same is true for the amount of damages and the 60-40% allocation of fault under Michigan's comparative negligence doctrine.
 
 
 24
 This case was fairly tried and the jury properly instructed under Michigan law. The evidence was properly admitted.
 
 
 25
 AFFIRMED.