**Michigan Supreme Court**
**Lansing, Michigan 489009**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 19, 2004**

STEVEN J. VALCANIANT and KATHLEEN A.
VALCANIANT,

    Plaintiffs-Appellants,

v                         No. 121141

DETROIT EDISON COMPANY,

    Defendant-Appellee

and

DE ANGELIS LANDSCAPE, INC.,

    Defendant.

_____

PER CURIAM

We granted leave to appeal to consider whether Detroit Edison Company owed plaintiff[1] a legal duty to de-energize an overhead power line that was severed by equipment being operated under plaintiff's direction. Relying on *Groncki v*

_____

[1] Throughout this opinion, "plaintiff" refers only to Steven J. Valcaniant. Although plaintiff's wife, Kathleen A. Valcaniant, is also a party to the lawsuit, her claims are derivative.

*Detroit Edison Co*, 453 Mich 644; 557 NW2d 289 (1996), the Court of Appeals held that Edison had no reason to foresee plaintiff's injury because it had no reason to foresee that plaintiff was the cause of the fault and, as a result, did not owe a legal duty to plaintiff.[2]  We affirm.

I

In 1974, plaintiff purchased a four-acre gravel lot in Imlay City; in 1987, he opened a used car business.  At all times, uninsulated power lines owned by Edison existed along the back property line.  These lines were suspended more than twenty-five feet in the air.  Plaintiff admitted that he was aware of the lines and the danger they posed.

On August 15, 1995, plaintiff was injured while giving directions to the driver of a dump truck delivering fill dirt to the back portion of his property.  As the truck became free of the weight of its load, it rose upward and its highest edge severed an overhead power line.  The ground was wet, and the electricity that flowed through the truck continued through the ground to plaintiff, who was standing six or seven feet away, knocking him unconscious.

A sensor known as an automatic reclosure device detected the fault in the severed line almost immediately,

[2] Unpublished opinion per curiam, issued February 19, 2002 (Docket No. 227499).

2

and momentarily stopped the current flow.  Because many faults are temporary, the sensor is designed to restart the current flow three times within a period of six seconds, checking each time to see whether the fault remains.  If the fault has cleared, the sensor will allow the line to remain energized.  If, after these three cycles, the fault remains, the sensor will completely de-energize the line.  By using this sensor, Edison can avoid unnecessary interruptions of its customers' service that would be caused by faults occasioned by a power line's fleeting contact with objects like tree limbs and small animals.

Here, the sensor operated as intended; it restarted the current three times and then de-energized the line when the fault failed to clear.  Plaintiff suffered second-degree burns to his back and arm from the shocks that he received while the sensor completed its cycles.

## II

Plaintiff and his wife sued Edison, alleging that the company was liable in tort.[3]  Edison moved for summary disposition, arguing that it owed no legal duty to plaintiff.  Plaintiff opposed the motion by arguing that Edison owed it a legal duty to de-energize the severed

---

[3] They also sued the contractor who operated the dump truck.  That party was later dismissed by stipulation.

power line immediately. Plaintiff asserted that Edison should have foreseen that its use of the sensor could cause injury. The trial court agreed with plaintiff and denied Edison's motion.

The Court of Appeals granted Edison's application for leave for interlocutory appeal and reversed the decision of the trial court. After considering this Court's opinion in *Groncki*, it concluded that Edison owed no legal duty to plaintiff and was entitled to summary disposition.

We granted plaintiff's application for leave to appeal. 468 Mich 868 (2003).

### III

We review de novo appeals relating to summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The existence of a legal duty is a question of law.[4] *Groncki*, 453 Mich 649; *Beaudrie v Henderson*, 465 Mich 124, 130; 631 NW2d 308 (2001). In determining whether a legal duty exists, courts examine a variety of factors, including "foreseeability of the harm, degree of certainty

---

[4] Duty concerns whether a defendant is under *any* legal obligation to act for the benefit of the plaintiff. *Buczkowski v McKay*, 441 Mich 96, 100; 490 NW2d 330 (1992). This concept should be distinguished from the standard of care, which, in negligence cases, always requires reasonable conduct. See *id.* (distinguishing "between duty as the problem of the relational obligation between the plaintiff and the defendant, and the standard of care that in negligence cases is always reasonable conduct").

4

of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and . . . the burdens and consequences of imposing a duty and the resulting liability for breach." *Buczkowski v McKay*, 441 Mich 96, 101 n 4; 490 NW2d 330 (1992) (citing Prosser & Keaton, Torts [5th ed], § 53, p 359 n 24). See also *Schultz v Consumers Power Co*, 443 Mich 445, 450; 506 NW2d 175 (1993).

In this case, plaintiff does not argue that Edison failed to inspect the power lines, or that the lines were in disrepair.[5] Instead, plaintiff argues that Edison had a legal duty to de-energize the power line immediately and completely after it was severed by the dump truck. This Court addressed a power company's legal duty to de-energize a power line in *Groncki*. That case consolidated three lawsuits brought against Edison by individuals who were injured when equipment they were using outdoors came into contact with overhead power lines.[6] 453 Mich 650-653

---

[5] As a result, this Court's opinion in *Schultz*, 443 Mich 451, in which we held that the standard of care requires a power company "to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects," is not pertinent to this case.

[6] In *Groncki*, a condominium complex's maintenance supervisor accidentally brought an aluminum ladder into contact with a power line twenty-one feet overhead. In *Bohnert*, a truck driver deployed his truck's unloading boom in a way that caused it to contact a power line twenty-six

(opinion by BRICKLEY, C.J.). In the lead opinion, Chief Justice BRICKLEY concluded that the injuries suffered by the three plaintiffs were not foreseeable and that Edison owed them no legal duty. He added that public policy considerations, including the "public's need for electric power at a reasonable cost," further militated against imposing a legal duty under the circumstances. *Id*. at 661.[7]

Similar considerations are implicated in this case. However, we need not reach the balancing required by *Buczkowski*. See *Buczkowski, supra* at 101 ("Other considerations may be, and usually are, more important [than foreseeability]."). The circumstances surrounding plaintiff's injury fail to satisfy even the lowest threshold requirement—that the harm incurred was foreseeable. See *Brown v Michigan Bell Telephone, Inc,* 459 Mich 874 (1998).

---

feet overhead. Finally, in *Parcher*, a construction worker used a forklift to move scaffolding and caused the scaffolding to contact a power line that was thirty-five feet overhead.

[7] No other justice signed the lead opinion. Justice Boyle concurred in the result only. *Id*. at 665. Justice Weaver, joined by Justice RILEY, concurred with Chief Justice BRICKLEY regarding the rationale and disposition of the claims against Edison, but dissented regarding the liability imposed on a nonutility defendant. *Id*. at 674. Justice MALLETT, joined by Justice CAVANAGH, concurred in the disposition of *Bohnert* and *Parcher*, but dissented in *Groncki* because they believed that the harm suffered by that plaintiff was foreseeable. *Id*. at 665. Finally, Justice LEVIN dissented in all three cases. *Id*. at 681.

Edison had no obligation to anticipate that the dump truck operated under plaintiff's direction would sever an overhead power line that was suspended more than twenty-five feet above the ground, much less that plaintiff would be standing on wet ground several feet away. As a result, Edison had no legal duty to anticipate that plaintiff might be injured when the sensor device briefly re-energized the line, as it was designed to do, or to take other steps to prevent plaintiff's injury. Because we conclude that plaintiff's injuries were unforeseeable as a matter of law, we need not consider other variables that might militate against the imposition of a legal duty where harm is foreseeable. See *Buczkowski, supra* at 102.[8]

We therefore affirm the Court of Appeals opinion reversing the decision of the trial court and remanding this case for entry of an order of summary disposition in favor of Edison. MCR 7.302(G)(1).

> Maura D. Corrigan
> Michael F. Cavanagh
> Elizabeth A. Weaver
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

---

[8] We noted in *Buczkowski* that "[w]here foreseeability fails as an adequate template for the existence of a duty, recourse must be had to the basic issues of policy underlying the core problem whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Id.* at 102.

S T A T E   O F   M I C H I G A N

SUPREME COURT

STEVEN J. VALCANIANT and
KATHLEEN A. VALCANIANT,

    Plaintiffs-Appellants,

v                             No. 121141

DETROIT EDISON COMPANY,

    Defendant-Appellee,

and

DE ANGELIS LANDSCAPE, INC.,

    Defendant.

_____

KELLY, J. (*concurring in result only*).

The majority concludes that defendant Detroit Edison Company has no duty to de-energize an electrical line that is accidentally severed by another's negligence. I find its analysis flawed.

As Justice Levin recognized in *Groncki v Detroit Edison Co,*[1] this Court continues to confuse duty and proximate causation with respect to electric utility companies. The result has been that these companies are now exempt from a broad duty to exercise due care for the

_____
[1] 453 Mich 644, 679-680; 557 NW2d 289 (1996) (Levin, J., dissenting).

welfare of others.  Because I cannot agree that this should be the law, I must dissent from the analysis.

Traditionally, there are four elements to a tort: duty, breach, causation, and damages.  *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000).  All but the last are at issue in this case.

Whether a defendant owes a duty to a plaintiff is a question of law.  *Simko v Blake,* 448 Mich 648, 655; 532 NW2d 842 (1995).  Recognition of a duty implicates various considerations: the relationship between the parties, the nature and foreseeability of the risk to be avoided, and the burdens and benefits of recognition.  See *Buczowski v McKay*, 441 Mich 96, 101-103; 490 NW2d 330 (1992). Among strangers who lack a special relationship to one another, the duty owed is most basic, that of reasonable conduct under the circumstances. *Moning v Alfono*, 400 Mich 425, 443; 254 NW2d 759 (1977), citing Restatement of Torts, 2d, § 283.

Whether a defendant fulfilled or whether it breached its duty in a given case is a question of fact.  *Murdock v Higgins,* 454 Mich 46, 53; 559 NW2d 639 (1997).  In a controversy among strangers who lack a special relationship, the trier of fact must decide whether the

2

defendant breached its duty to exercise reasonable care for the safety of others.

The element of causation addresses whether a defendant's breach of its duty caused the plaintiff's injury. Causation has two components. The first is actual causation: whether the plaintiff's injury was caused by the defendant's breach of its duty toward the plaintiff. It is a question of fact, which is also resolved by the trier of fact.

The second component is proximate or legal cause. A defendant's breach of duty is said to have proximately caused a plaintiff's injury only where the defendant reasonably could have foreseen the kind of harm that befell the plaintiff. It is unnecessary that the exact mechanism or sequence of events leading to the harm be reasonably foreseeable. Dobbs, Torts, Proximate Cause, ch 10, § 180, p 444 (2001). The foreseeability requirement arises from the principles that liability should be limited in a practical manner and should comport with notions of justice. Dobbs, § 181, p 446. Proximate cause is a question of law. *Moning* at 440.

The effect of foreseeability on duty and proximate cause confounded Judges Cardozo and Andrews in the famous

case *Palsgraf v Long Island R Co*[2] and continues to vex jurists today. This Court has adopted Judge Cardozo's view that whether a duty is owed depends on whether harm is reasonably foreseeable. See *Moning* at 439, 441.

ELECTRIC UTILITY COMPANIES OWE THE PUBLIC A BROAD DUTY

The Court today affirms the holding in *Groncki* that inadvertent contact with overhead electric utility lines is not reasonably foreseeable as a matter of law. Therefore, electric utilities do not owe a duty to others to take reasonable precautions to guard against that risk. I cannot agree.

It is quite reasonably foreseeable that someone may act in negligent disregard for his own safety and contact an overhead electric utility line. I take judicial notice that, with respect to electrical lines, about five percent of all workplace fatalities each year are electrocutions. United States Dep't of Labor, *2002 Census of Fatal Occupational Injuries (Charts)*, <http://www.bls.gov/iif/oshwc/cfoi/cfch0001.pdf> (accessed May 3, 2004). Heavy equipment that reaches great heights is routinely operated in modern society. Thus, under the appropriate negligence analysis, electric utilities owe a duty to the general

---

[2] 248 NY 339; 162 NE 99 (1928).

public to conduct their business so as not to create an unreasonable risk of accidental electrocution.

As this Court has held:

> Those engaged in transmitting electricity are bound to anticipate ordinary use of the area surrounding the lines and to appropriately safeguard the attendant risks. *The test to determine whether a duty was owed is not whether the company should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable activity done on the premises for business, work, or pleasure. . . .*
>
> Where service wires erected and maintained by an electric utility company carry a powerful electric current, so that persons coming into contact with or proximity to them are likely to suffer serious injury or death, the company must exercise reasonable care to protect the public from danger. The degree of care required is that used by prudent persons in the industry, under like conditions and proportionate to the dangers involved, to guard against reasonably foreseeable or anticipated contingencies. [*Schultz v Consumers Power Co*, 443 Mich 445, 452-454; 506 NW2d 175 (1993) (emphasis added).]

In short, electric companies have a duty to conduct themselves reasonably under the circumstances.

In this case, the majority frames the issue as whether defendant had a duty to do a specific act: de-energize a severed line until the cause of the fault can be determined. It then treats Steven Valcaniant's negligence as conclusive evidence that defendant does not owe a duty to perform that act. The majority finds that it is not

5

reasonably foreseeable that someone in Mr. Valcaniant's position would contact the electrical line involved here.

The majority's analysis might be appropriate in a contributory negligence jurisdiction where the effect of the plaintiff's negligence, even when slight, is to absolve the defendant of all legal liability. But, Michigan long ago abandoned this harsh tort theory. *Placek v Sterling Hts*, 405 Mich 638, 701; 275 NW2d 511 (1979). Rather, a defendant may be liable to a negligent plaintiff to the extent his negligence caused the plaintiff's injury. See MCL 600.2956.

Here, it is reasonably foreseeable that heavy equipment, such as the raised bed of a dump truck, would contact an overhead electrical line, causing injury. Thus, defendant owed plaintiffs a duty to install its distribution lines in a manner that does not create an unreasonable risk from such a vehicle. I do not agree that, as a matter of law, electric utility companies owe the public no duty to take reasonable precautions to protect it from accidental contact with their lines. The absence of a duty encourages utility defendants to rely on customs in the industry and discourages innovation of new and safer ways to deliver electricity.

6

Blind reliance on industry customs was rejected more than seventy years ago in the famous case of *The TJ Hooper*, 60 F2d 737 (CA 2, 1932). See also 2 Restatement Torts, 2d, § 295A, illus 2. There, the owners of a tugboat failed to furnish emergency radios to their crew, because such radios were not standard equipment in the industry. The federal appeals court held that reliance on custom was a consideration in whether the defendant acted reasonably in providing for the crew's safety, but was not conclusive. That decision has encouraged the standard of care to evolve as technology advances. The same principle applies here.

WHY SUMMARY DISPOSITION WAS APPROPRIATE IN THIS CASE

Once we recognize that defendant has a broad duty to exercise due care to protect the public, the question becomes whether it breached its duty. The jury should determine whether defendant acted reasonably in this case by placing its lines (1) high off the ground, (2) in plain view near the back of plaintiffs' property, (3) away from easy access by the public, and (4) by installing a reclosure device to minimize dangerous power failures and protect plaintiff from being exposed to a continuous charge.

The following facts are without contest: (1) plaintiff Stephen Valcaniant knew that defendant's electrical lines

7

were in the air at the back of his property and that they were dangerous; (2) defendant had placed its lines higher than the height recommended by the National Electric Safety Code, American National Standards Institute, National Electric Safety Code, Table 232-1 (1989); (3) the lines remained more than seven feet above that recommendation at the time of the accident, even after plaintiff had raised the grade of the ground below; (4) had the lines been placed underground, they could have been susceptible to flooding and accidental contact with digging equipment; (5) defendant installed automatic reclosure devices to avoid unnecessarily mobilizing repair crews to restore electrical service interrupted by intermittent short circuits from tree limbs and wildlife; (6) these reclosure devices have become standard in the industry, and can eliminate up to eighty percent of power disruptions; (7) interruptions in electrical service can endanger lives in such ways as disabling medical devices and traffic signals; (8) the lines and equipment were in good repair.

Considering today's limitations on maintaining a reliable electrical system, no reasonable juror could disagree that defendant met its duty. Therefore, on the basis of facts and reasoning not given in the opinion per

8

curiam, I agree that the Court of Appeals properly ordered a grant of summary disposition for defendant.

CONCLUSION

I believe that the proper analysis of this case is that electric utility companies have a broad duty to take reasonable care for the safety of others. The commodity they provide carries risks from which the public must be protected. Defendant must fulfill its duty to protect the public against reasonably foreseeable negligent contact with its electrical lines.

In this case, defendant presented unrebutted evidence that its actions comported with industry standards and that preferable alternatives are not reasonably available. I would affirm the decision of the Court of Appeals and direct an order entering summary disposition for defendant.

Marilyn Kelly

9