KELLY, J.
(concurring in result only). The majority concludes that defendant Detroit Edison Company has no duty to de-energize an electrical line that is accidentally severed by another’s negligence. I find its analysis flawed.
As Justice LEVIN recognized in Groncki v Detroit Edison Co, [1] this Court continues to confuse duty and proximate causation with respect to electric utility companies. The result has been that these companies are now exempt from a broad duty to exercise due care for the welfare of others. Because I cannot agree that this should be the law, I must dissent from the analysis.
*89 CLARIFYING TORT LIABILITY
Traditionally, there are four elements to a tort: duty, breach, causation, and damages. Case v Consumers Power Co, 463 Mich 1, 6; 615 NW2d 17 (2000). All but the last are at issue in this case.
Whether a defendant owes a duty to a plaintiff is a question of law. Simko v Blake, 448 Mich 648, 655; 532 NW2d 842 (1995). Recognition of a duty implicates various considerations: the relationship between the parties, the nature and foreseeability of the risk to be avoided, and the burdens and benefits of recognition. See Buczowski v McKay, 441 Mich 96, 101-103; 490 NW2d 330 (1992). Among strangers who lack a special relationship to one another, the duty owed is most basic, that of reasonable conduct under the circumstances. Moning v Alfono, 400 Mich 425, 443; 254 NW2d 759 (1977), citing Restatement of Torts, 2d, § 283.
Whether a defendant fulfilled or whether it breached its duty in a given case is a question of fact. Murdock v Higgins, 454 Mich 46, 53; 559 NW2d 639 (1997). In a controversy among strangers who lack a special relationship, the trier of fact must decide whether the defendant breached its duty to exercise reasonable care for the safety of others.
The element of causation addresses whether a defendant’s breach of its duty caused the plaintiffs injury. Causation has two components. The first is actual causation: whether the plaintiffs injury was caused by the defendant’s breach of its duty toward the plaintiff. It is a question of fact, which is also resolved by the trier of fact.
The second component is proximate or legal cause. A defendant’s breach of duty is said to have proximately caused a plaintiffs injury only where the defendant *90 reasonably could have foreseen the kind of harm that befell the plaintiff. It is unnecessary that the exact mechanism or sequence of events leading to the harm be reasonably foreseeable. Dobbs, Torts, Proximate Cause, ch 10, § 180, p 444 (2001). The foreseeability requirement arises from the principles that liability should be limited in a practical manner and should comport with notions of justice. Dobbs, § 181, p 446. Proximate cause is a question of law. Moning at 440.
The effect of foreseeability on duty and proximate cause confounded Judges Cardozo and Andrews in the famous case Palsgraf v Long Island R Co[2] and continues to vex jurists today. This Court has adopted Judge Cardozo’s view that whether a duty is owed depends on whether harm is reasonably foreseeable. See Moning at 439, 441.
ELECTRIC UTILITY COMPANIES OWE THE PUBLIC A BROAD DUTY
The Court today affirms the holding in Groncki that inadvertent contact with overhead electric utility lines is not reasonably foreseeable as a matter of law. Therefore, electric utilities do not owe a duty to others to take reasonable precautions to guard against that risk. I cannot agree.
It is quite reasonably foreseeable that someone may act in negligent disregard for his own safety and contact an overhead electric utility fine. I take judicial notice that, with respect to electrical lines, about five percent of all workplace fatalities each year are electrocutions. United States Dep’t of Labor, 2002 Census of Fatal Occupational Injuries (Charts), <http://www.bls.gov/ iif/oshwc/cfoi/cfch0001.pdf> (accessed May 3, 2004). Heavy equipment that reaches great heights is rou *91 tinely operated in modern society. Thus, under the appropriate negligence analysis, electric utilities owe a duty to the general public to conduct their business so as not to create an unreasonable risk of accidental electrocution.
As this Court has held:
Those engaged in transmitting electricity are bound to anticipate ordinary use of the area surrounding the lines and to appropriately safeguard the attendant risks. The test to determine whether a duty was owed is not whether the company should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable activity done on the premises for business, work, or pleasure. ...
Where service wires erected and maintained by an electric utility company carry a powerful electric current, so that persons coming into contact with or proximity to them are likely to suffer serious injury or death, the company must exercise reasonable care to protect the public from danger. The degree of care required is that used by prudent persons in the industry, under like conditions and proportionate to the dangers involved, to guard against reasonably foreseeable or anticipated contingencies. [Schultz v Consumers Power Co, 443 Mich 445, 452-454; 506 NW2d 175 (1993) (emphasis added).]
In short, electric companies have a duty to conduct themselves reasonably under the circumstances.
In this case, the majority frames the issue as whether defendant had a duty to do a specific act: de-energize a severed line until the cause of the fault can be determined. It then treats Steven Valcaniant’s negligence as conclusive evidence that defendant does not owe a duty to perform that act. The majority finds that it is not reasonably foreseeable that someone in Mr. Valca-niant’s position would contact the electrical line involved here.
*92 The majority’s analysis might be appropriate in a contributory negligence jurisdiction where the effect of the plaintiffs negligence, even when slight, is to absolve the defendant of all legal liability. But, Michigan long ago abandoned this harsh tort theory. Placek v Sterling Hts, 405 Mich 638, 701; 275 NW2d 511 (1979). Rather, a defendant may be liable to a negligent plaintiff to the extent his negligence caused the plaintiffs injury. See MCL 600.2956.
Here, it is reasonably foreseeable that heavy equipment, such as the raised bed of a dump truck, would contact an overhead electrical line, causing injury. Thus, defendant owed plaintiffs a duty to install its distribution lines in a manner that does not create an unreasonable risk from such a vehicle. I do not agree that, as a matter of law, electric utility companies owe the public no duty to take reasonable precautions to protect it from accidental contact with their lines. The absence of a duty encourages utility defendants to rely on customs in the industry and discourages innovation of new and safer ways to deliver electricity.
Blind reliance on industry customs was rejected more than seventy years ago in the famous case of The TJ Hooper, 60 F2d 737 (CA 2, 1932). See also 2 Restatement Torts, 2d, § 295A, illus 2. There, the owners of a tugboat failed to furnish emergency radios to their crew, because such radios were not standard equipment in the industry. The federal appeals court held that reliance on custom was a consideration in whether the defendant acted reasonably in providing for the crew’s safety, but was not conclusive. That decision has encouraged the standard of care to evolve as technology advances. The same principle applies here.
*93 WHY SUMMARY DISPOSITION WAS APPROPRIATE IN THIS CASE
Once we recognize that defendant has a broad duty to exercise due care to protect the public, the question becomes whether it breached its duty. The jury should determine whether defendant acted reasonably in this case by placing its lines (1) high off the ground, (2) in plain view near the back of plaintiffs’ property, (3) away from easy access by the public, and (4) by installing a reclosure device to minimize dangerous power failures and protect plaintiff from being exposed to a continuous charge.
The following facts are without contest: (1) plaintiff Stephen Valcaniant knew that defendant’s electrical lines were in the air at the back of his property and that they were dangerous; (2) defendant had placed its lines higher than the height recommended by the National Electric Safety Code, American National Standards Institute, National Electric Safety Code, Table 232-1 (1989); (3) the lines remained more than seven feet above that recommendation at the time of the accident, even after plaintiff had raised the grade of the ground below; (4) had the lines been placed underground, they could have been susceptible to flooding and accidental contact with digging equipment; (5) defendant installed automatic reclosure devices to avoid unnecessarily mobilizing repair crews to restore electrical service interrupted by intermittent short circuits from tree limbs and wildlife; (6) these reclosure devices have become standard in the industry, and can eliminate up to eighty percent of power disruptions; (7) interruptions in electrical service can endanger lives in such ways as disabling medical devices and traffic signals; (8) the lines and equipment were in good repair.
Considering today’s limitations on maintaining a reliable electrical system, no reasonable juror could *94 disagree that defendant met its duty. Therefore, on the basis of facts and reasoning not given in the opinion per curiam, I agree that the Court of Appeals properly ordered a grant of summary disposition for defendant.
CONCLUSION
I believe that the proper analysis of this case is that electric utility companies have a broad duty to take reasonable care for the safety of others. The commodity they provide carries risks from which the public must be protected. Defendant must fulfill its duty to protect the public against reasonably foreseeable negligent contact with its electrical lines.
In this case, defendant presented unrebutted evidence that its actions comported with industry standards and that preferable alternatives are not reasonably available. I would affirm the decision of the Court of Appeals and direct an order entering summary disposition for defendant.

 453 Mich 644, 679-680; 557 NW2d 289 (1996) (Levin, J., dissenting).

 248 NY 339; 162 NE 99 (1928).