MURDOCK v HIGGINS

Docket No. 143235. Submitted August 2, 1994, at Grand Rapids. Decided December 29, 1994, at 9:15 A.M. Leave to appeal sought.

Christopher Murdock brought an action in the Kalamazoo Circuit Court against Charles Higgins, Donna Jarvis, and Mark Kelley, alleging that Higgins and Jarvis, supervisors for the Missaukee County Department of Social Services and the Kalamazoo County Department of Social Services, respectively, breached their duties to hire a competent individual and to prevent Kelley, a volunteer services coordinator who transferred from the Missaukee County DSS to the Kalamazoo County DSS, from engaging in acts of misconduct. The action was brought after Kelley sexually assaulted the plaintiff, a volunteer worker for the Kalamazoo County DSS. The jury found no cause of action with regard to Jarvis and that the plaintiff had sustained damages for which Kelley and Higgins were liable. The court, William G. Schma, J., entered a judgment consistent with the jury's verdict and denied Higgins' motions for a new trial or a judgment notwithstanding the verdict. Higgins appealed.

The Court of Appeals *held:*

1. The trial court erred in finding that Higgins had a special duty to protect the plaintiff from the harm inflicted by Kelley. No special relationship existed between the plaintiff and Higgins. The plaintiff neither entrusted himself to the protection and control of Higgins nor lost the ability to protect himself as a result of a special relationship with Higgins.

2. If a special relationship existed between Higgins and Kelley during the course of Kelley's employment in Missaukee County, the special relationship ceased when Kelley transferred

REFERENCES

Am Jur 2d, Infants § 16; Master and Servant § 121; Negligence §§ 100, 104, 105, 108, 109; Trial §§ 1183, 1184.

Comment Note.—Private person's duty and liability for failure to protect another against criminal attack by third person. 10 ALR3d 619.

Validity, construction, and application of state statute requiring doctor or other person to report child abuse. 73 ALR4th 782.

to Kalamazoo County. The evidence shows that Higgins could not have foreseen the eventual harm done to the plaintiff after Kelley transferred.

3. Although Higgins may have had a social or moral responsibility to convey his suspicions regarding Kelley's sexual preference to Jarvis, Kelley's supervisor in Kalamazoo County, he did not have a legal duty to do so. Higgins' failure to apprise Jarvis of his suspicions regarding Kelley was not gross negligence.

4. The trial court erred in instructing the jury with regard to the Child Protection Law, MCL 722.621 *et seq.*; MSA 25.248(1) *et seq.*, because that law has no application to the facts of this case.

5. The plaintiff presented insufficient evidence to support the finding that Higgins' failure to convey his suspicions to the Kalamazoo County office was a proximate cause of the plaintiff's injuries.

6. The denial of the motions for a new trial and a judgment notwithstanding the verdict must be reversed and the case must be remanded for entry of a judgment for Higgins.

Reversed and remanded.

1. NEGLIGENCE — DUTY — THIRD PARTIES — SPECIAL RELATIONSHIPS.

An individual generally has no duty to protect another who is endangered by a third person's conduct; however, a duty of reasonable care may arise where the individual stands in a special relationship with either the victim or the third party; the determination whether a duty-imposing special relationship exists in a particular case involves ascertaining whether the plaintiff entrusted himself to the control and protection of the defendant, with a consequent loss of control over self-protection.

2. MASTER AND SERVANT — DUTY TO DISCLOSE INFORMATION — FORMER EMPLOYEES — CONDITIONAL PRIVILEGE TO DIVULGE INFORMATION.

Michigan law recognizes an employer's qualified privilege to divulge information about a former employee to a prospective employer; the conditional privilege is not a legal obligation requiring employers to disclose adverse information concerning a former employee but, rather, is an imperfect obligation of a moral or social character.

3. TRIAL — JURY INSTRUCTIONS.

It is error for a trial court to instruct a jury with regard to an issue that is not sustained by the evidence or established by the pleadings.

4. Statutes — Child Protection Act — Child Abuse — Duty to
    Report. .
    The section of the Child Protection Act regarding the duty of
    certain individuals to report suspected child abuse or neglect
    applies only to persons responsible for a child's health or
    welfare who know of abuse of that specific child (MCL
    722.623[1]; MSA 25.248[3][1]).

*Ford & Kriekard, P.C.* (by *Michael C. Bingen*),
for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, and *Thomas R. Wheeker,*
Assistant Attorney General, for Charles Higgins.

Before: Hood, P.J., and Marilyn Kelly and J. L.
Martlew,* JJ.

Per Curiam. Plaintiff, then eighteen years old,
was sexually assaulted by his supervisor, Mark
Kelley, while plaintiff was serving as a volunteer
at the Kalamazoo County Department of Social
Services. Plaintiff brought suit alleging that defen-
dants breached their duties to hire a competent
individual and prevent Kelley from engaging in
acts of misconduct. The jury returned a verdict in
favor of plaintiff against defendants Mark Kelley
and Charles Higgins, but found no cause of action
with regard to defendant Donna Jarvis. Damages
in the amount of $120,774 were awarded to plain-
tiff. The trial court denied defendant Higgins'
(hereafter defendant) motions for a new trial and a
judgment notwithstanding the verdict. Defendant
appeals as of right and we reverse.

Defendant was the Director of the Missaukee
County Department of Social Services and Kelley's
supervisor. He hired Kelley as the volunteer ser-
vices coordinator for that county in 1985. In 1986,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Higgins received reports that Kelley had been seen in a local park in the company of young men. Higgins, who suspected that Kelley might be homosexual, had several discussions with Kelley regarding the matter. During one of the conversations, Kelley told Higgins that he was not sure that all of his "contacts" were over eighteen years of age. Kelley assured Higgins that he would be more discreet. According to Higgins, Kelley never told him that there had been any sexual involvement with the young men. By way of follow up, Higgins asked the local sheriff to investigate the activities in the park. The Missaukee County Sheriff informed Higgins that he had no reported or noted acts by Kelley. Eventually, Higgins suggested that Kelley consider transferring to a larger community that might be more tolerant of his sexual orientation.

Later in 1986, Kelley transferred to the Kalamazoo County Department of Social Services as a volunteer services coordinator. Unlike his job responsibilities in Missaukee County, Kelley's job in Kalamazoo County involved some contact with children. Higgins claims to have attempted to contact Kelley's new supervisor, Donna Jarvis, to convey his suspicions about Kelley. However, the record is clear that Jarvis was never so informed. Plaintiff, who was performing volunteer work at the agency as part of a juvenile court order to provide community service, was "befriended" by Kelley. Kelley was plaintiff's supervisor.

On the occasion in question, Kelley took plaintiff out for dinner. After dinner, plaintiff went with Kelley to Kelley's residence; Kelley and plaintiff shared two marijuana cigarettes. During the visit, Kelley stroked plaintiff's leg, licked his ear, called him "baby," and repeatedly attempted to push him onto the bed. Attempting to buy time, plaintiff

suggested that they go visit the hot tubs, a suggestion that Kelley had made earlier in the evening. While driving to the hot tubs, Kelley told plaintiff that he had everything they needed in his little black bag, including soap, condoms, and petroleum jelly. Upon arriving at the hot tubs, plaintiff ran away to a friend's home and the police were summoned.

Defendant first claims that the trial court erred as a matter of law in finding that he had a special duty to protect plaintiff from the harm inflicted by Kelley and that he had a duty to transmit adverse employment information concerning Kelley to the Kalamazoo County Department of Social Services. More specifically, Higgins contends that he was a public official whose duties were owed to the public at large and not to any particular individual. We agree that the trial court erred in finding that Higgins had a special duty to protect plaintiff from the harm inflicted by Kelley.

In a negligence action, the question whether a duty exists is one of law to be decided by the trial court. *Schneider v Nectarine Ballroom, Inc (On Remand),* 204 Mich App 1, 4; 514 NW2d 486 (1994). Generally, an individual has no duty to protect another who is endangered by a third person's conduct. *Marcelletti v Bathani,* 198 Mich App 655, 664; 500 NW2d 124 (1993). The duty to protect others against harm from third persons is based on a relationship between the parties. *Id.* A duty of reasonable care may arise where one stands in a special relationship with either the victim or the person causing the injury. *Id.* The requisite special relationship must exist between the defendant and the victim or the defendant and the third party. *Id.* Michigan courts have defined as protected third parties only "those persons

readily identifiable as foreseeably endangered." *Id.* at 665.

The determination whether a duty-imposing special relationship exists in a particular case involves ascertaining whether the plaintiff entrusted himself to the control and protection of the defendant, with a consequent loss of control to protect himself. *Dykema v Gus Macker Enterprises, Inc,* 196 Mich App 6, 9; 492 NW2d 472 (1992). In order to determine whether a "special relationship" giving rise to a legal duty to act exists in a particular case, this Court has held that it is necessary to

> "balance the societal interests involved, the severity of the risk, the burden upon the defendant, the likelihood of occurrence, and the relationship between the parties. . . . Other factors which may give rise to a duty include the foreseeability of the [harm], the defendant's ability to comply with the proposed duty, the victim's inability to protect himself from the [harm], the costs of providing protection, and whether the plaintiff had bestowed some economic benefit on the defendant." [*Id.,* quoting *Roberts v Pinkins,* 171 Mich App 648, 652-653; 430 NW2d 808 (1988).]

The thrust of plaintiff's argument is that if Higgins had conveyed the information regarding Kelley's sexuality to Jarvis before Kelley's transfer to Kalamazoo County, the incident could have or would have been avoided. We first note that there is no indication in the record that a "special relationship" existed between plaintiff and defendant Higgins. To the contrary, Higgins was a supervisor in the Missaukee County Department of Social Services, while plaintiff was a DSS volunteer in Kalamazoo County. Thus, it appears that Higgins did not even know plaintiff. Therefore, no "special relationship" existed between Higgins and

plaintiff because plaintiff had not entrusted himself to the protection and control of Higgins. *Gus Macker, supra.* Further, there is no indication that, pursuant to his nonrelationship with Higgins, plaintiff lost the ability to protect himself. *Gus Macker, supra.*

Similarly, Higgins' relationship with Kelley ended when Kelley transferred from the Missaukee County office to Kalamazoo County. Therefore, even if the relationship between Higgins and Kelley during the course of Kelley's employment in Missaukee County could be deemed as "special," this designation ceased when Kelley transferred to Kalamazoo County. Further, when Kelley worked at the Missaukee County office, his job responsibilities did not require him to come in contact with young males. Therefore, Higgins had no reasonable basis to foresee that Kelley would harm plaintiff or any other volunteer in another county's Department of Social Services because Kelley had not done so while in Missaukee County. The fact that Higgins could not have foreseen the eventual harm done to plaintiff in this case is especially true given the fact that Higgins did not even know plaintiff.

Again, the record reveals that, although Higgins had generalized suspicions regarding Kelley's sexual preference, he had no reason to suspect that Kelley posed a threat to persons in the care or employ of the DSS. Though Higgins may have had reason to believe that Kelley might be an active homosexual in the community at large, he never had reason to suspect that Kelley sought to do the same at the DSS. To his credit, Higgins did attempt to ascertain through the Missaukee County Sheriff's Department whether Kelley had made "contacts" with minors in a public park. However, the

sheriff's department informed Higgins that it had no such information relating to Kelley.

Plaintiff urges this Court to uphold the trial court's determination that Higgins had a duty to inform Kelley's new supervisor about suspicions and unsubstantiated innuendoes relating to Kelley's conduct *outside of and unrelated to the performance of his duties at the DSS.* As stated in *Moore v St Joseph Nursing Home, Inc,* 184 Mich App 766, 768-769; 459 NW2d 100 (1990):

> We agree that Michigan law recognizes an employer's qualified privilege to divulge information about a former employee to a prospective employer. *There is, however, nothing about the conditional privilege which magically transposes it into a legal obligation requiring employers to disclose adverse information concerning a former employee.* Rather, it is quite clear that in Michigan a former employer's duty to release information about a past employee is an imperfect obligation of a moral or social character.
>
> *There is a great societal interest in insuring that employment records are kept confidential.* It is all too easy to envision a career destroyed by malefic information released by a disgruntled former employer. *To expand the qualified privilege presently enjoyed by employers to require the release of deleterious information without fear of a defamation suit represents a major change in the law.* We note that, at present, Michigan has no less than nine statutory provisions addressing libel and slander. In light of this clearly demonstrated legislative intent to regulate defamation law, *we feel the position urged upon this Court by plaintiffs is the type of substantive change in the law which is best left to the Legislature.* [Emphasis added, citations omitted.]

Having reviewed the record de novo we conclude that the trial court erred as a matter of law in

finding that defendant Higgins had a special duty to protect plaintiff from the harm inflicted by Kelley. *In re Lafayette Towers,* 200 Mich App 269, 273; 503 NW2d 740 (1993); *Marcelletti, supra; Gus Macker, supra; Moore, supra.* Though Higgins arguably may have had a social or moral responsibility to convey his suspicions to Jarvis, *Moore* makes it clear that he did not have a legal duty to do so. Finally, contrary to plaintiff's position, we note that defendant's conduct in failing to apprise Jarvis of his suspicions regarding Kelley's sexuality does not amount to gross negligence as set forth in *Patterson v Kleiman,* 199 Mich App 191; 500 NW2d 761 (1993).

Defendant next argues that the trial court erred in instructing the jury with regard to the Child Protection Law, MCL 722.621 *et seq.*; MSA 25.248(1) *et seq.* We agree. It is error to give a jury instruction on an issue that is not sustained by the evidence or made out by the pleadings. *Mills v White Castle Systems, Inc,* 199 Mich App 588, 591; 502 NW2d 331 (1993). When this case arose, the Child Protection Law provided in relevant part:

> A physician, . . . social worker, social work technician . . . who has reasonable cause to suspect child abuse or neglect immediately, by telephone or otherwise, shall make an oral report, or cause an oral report to be made, of the suspected child abuse or neglect to the department. . . . [MCL 722.623(1); MSA 25.248(3)(1).]

The plain language of the above-quoted provision makes it clear that the Child Protection Law applies to the known abuse of a specific child and requires that a person responsible for the child's health or welfare who has knowledge of such abuse report it.

It is clear that defendant Higgins was not a

person responsible for the care or welfare of plaintiff because plaintiff was unknown to him. Additionally, Higgins had no names of specific children with whom Kelley allegedly met in the park. Most importantly, plaintiff was not the child whom the statute was designed to protect. *Marcelletti, supra.* This Court held in *Marcelletti* that the Legislature intended that liability under the Child Protection Law be limited to claims for damages by an identified abused child about whom no report was made. *Id.* at 659. As stated above, plaintiff was not a child that Higgins thought Kelley might have abused. Accordingly, because the Child Protection Law had no application to the facts of this case, the trial court erred in providing the jury instruction. *Mills, supra.*

Finally, defendant argues that plaintiff presented insufficient evidence to find that he was a proximate cause of plaintiff's injuries. Again, we agree. From the record, it is clear that Higgins was possessed with at best speculative information concerning Kelley's sexual orientation. The Missaukee County Sheriff could not substantiate Higgins' concerns. As is the case in the majority of employment contexts, Kelley could not have been disciplined on the basis of unsubstantiated rumors. In fact, a DSS labor relations representative testified that the DSS could not take any adverse action against an employee who, like Kelley, was seen with teenage boys in a public place. To the contrary, the representative testified that in the screening process the DSS can consider information that an applicant had homosexual contact with a minor only if the information was related to the applicant's job activity. Additionally, the record does not support plaintiff's contention that Higgins could have learned from Kelley's former employer that Kelley preferred sexual relations with young

boys. Kelley's former employer testified that the employer only would have divulged public information such as Kelley's name, years of service, current relationship to the employer, and whether Kelley voluntarily resigned.

Under these circumstances, Higgins lacked sufficient reliable information to take those steps deemed appropriate by plaintiff—namely, to warn the Kalamazoo County office that Kelley favored sex with young boys. Given the limits of Higgins' authority and DSS policy, it is clear that Higgins could not have taken meaningful and effective actions to prevent Kelley's abuse of plaintiff. Accordingly, Higgins' failure to convey his suspicions to the Kalamazoo County office was not the proximate cause of plaintiff's injuries.

For these reasons, the trial court's denial of defendant's motion for a new trial and a judgment notwithstanding the verdict is reversed and this cause is remanded for entry of a judgment in favor of defendant. We do not retain jurisdiction.