*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAKARIE NAPPIER, a Minor, by Next Friend
TAMARA NAPPIER, and ALL OTHERS
SIMILARLY SITUATED,

        Plaintiffs-Appellees,

v

GOVERNOR, DARNELL EARLEY, DANIEL
WYANT, LIANE SHEKTER SMITH, BRADLEY
WURFEL, VICTORIA EDEN WELLS, NANCY
PEELER, ROBERT SCOTT, NICK LYON and
GERALD AMBROSE,

        Defendants,

and

STEPHEN BUSCH, PATRICK COOK and
MICHAEL PRYSBY.

        Defendants-Appellants.

UNPUBLISHED
March 14, 2019

No. 344363
Court of Claims
LC No. 16-000071-MM

Before: SAWYER, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendants Stephen Busch, Patrick Cook, and Michael Prysby appeal as of right an order denying their motion for summary disposition premised on the ground that governmental immunity barred this class action lawsuit alleging gross negligence claims. We affirm.

This case concerns what has commonly been referred to as the "Flint water crisis." In 2014, the City of Flint switched its water source from the City of Detroit water system to the Flint River. Corrosion-control treatments required by the Environmental Protection Agency's (EPA) Lead and Copper Rule (LCR) were discontinued and ferric chloride was added to the water, which reduced the formation of trihalomethanes from organic matter but also increased

the corrosivity of the Flint River water. The more corrosive water is, the more readily metals like lead can be dissolved. Thereafter, the lead concentration in Flint's water rose to unsafe levels. Plaintiffs unknowingly consumed the lead-contaminated water, which caused elevated blood lead levels, which then caused brain damage.

On March 23, 2016, plaintiffs' class action lawsuit was filed on behalf of the minor children who had been living in Flint since April 25, 2014, and who suffered brain damage "as a result of the ingestion of lead-poisoned water from pipes and service lines that supplied water from the Flint River without the use of any corrosion control[.]" Defendants Busch, Cook, and Prysby were sued in their individual[1] and official capacities as employees of the Michigan Department of Environmental Quality (MDEQ) who were involved in the City of Flint's change of water sources, as well as its oversight, and were negligent or grossly negligent in the performance of their duties. In particular, defendant Busch was the district supervisor assigned to the Lansing District Office of the MDEQ, and plaintiffs' complaint alleges that he:

> participated in MDEQ's repeated violations of federal water quality laws, the failure to properly study and treat Flint River water, and the MDEQ's program of systemic denial, lies, and attempts to discredit honest outsiders. He personally falsely reported to the EPA that Flint had enacted an optimized corrosion control plan, providing assurances to the Plaintiff and the Putative class that the water was safe when he knew or should have known that these assurances were false, or were no more likely to be true than false.

Defendant Cook was the water treatment specialist assigned to the Lansing Community Drinking Water Unit of the MDEQ, and plaintiffs' complaint alleges that he:

> participated in[,] approved, and/or assented to the decision to allow Flint's water to be delivered to residents without corrosion control or proper study and/or testing.

Defendant Prysby was an engineer assigned to District 11 (Genesee County) of the MDEQ, and plaintiffs' complaint alleges that he:

> participated in, approved, and/or assented to the decision to switch the water source, failed to properly monitor and/or test the Flint River water, and providing assurances to the Plaintiff and the Putative class that the Flint River water was safe when he knew or should have known those statements to be untrue, or no more likely to be true than false.

---

[1] Plaintiffs' complaint alleged that, "[t]o the extent the Defendants' conduct was inconsistent with or contrary to their respective job responsibilities they acted outside the scope of their employment and are thus individually liable."

With regard to their gross negligence claims, plaintiffs' complaint alleges, in brief, that for several months defendants ignored complaints from the residents about the water, including its foul taste, odor, and color, and repeatedly reassured the public that the water was safe despite defendants' knowledge that the water contained dangerous concentrations of lead, as well as dangerous levels of trihalomethanes, a disinfectant byproduct. In fact, in March 2015, the MDEQ notified the Flint Water Treatment Plant that lead levels exceeded acceptable and safe levels. In June 2015, an agent from the EPA, Miguel Del Toral, wrote a report detailing the numerous, dangerous problems with Flint's water and this report was provided to these three defendants but no corrective actions were taken. Plaintiffs' complaint further alleges that in the summer of 2015, a pediatrician at Hurley Hospital in Flint, Dr. Mona Hanna-Attisha, published a study showing that there was "an increase in the percentage of Flint children with elevated blood lead levels from blood drawn in the second and third quarter of 2014." The data and conclusions drawn in that study were later determined to be correct by the Michigan Department of Health and Human Services (MDHHS). Despite the overwhelming evidence that the water was unsafe and a source of lead poisoning, plaintiffs allege in their complaint, defendants did not take any action with regard to this contaminated water supply until October 1, 2015, when a public health emergency was declared by Genesee County and residents were advised not to drink the water. Plaintiffs allege that defendants had duties to inspect, test, and treat the water supply system to ensure that it was safe for use, and to respond to and remedy the dangers discovered through timely and appropriate measures. Defendants also had duties to warn residents about the dangers rather than provide residents with false and misleading information. Plaintiffs further allege that defendants breached their duties and that their actions were so reckless as to demonstrate a substantial lack of concern for whether injury would result. Moreover, defendants' conduct was the direct and proximate cause of plaintiffs' lead poisoning and related injuries.

On April 6, 2018, defendants Busch, Cook, and Prysby moved for summary disposition under MCR 2.116(C)(7) and (C)(8). First, defendants argued that plaintiffs failed to comply with the statutory notice provision, MCL 600.6431, because the lawsuit had to be filed within six months of the accrual of claims for personal injuries and it was not so filed. In particular, plaintiffs' complaint was filed on March 23, 2016, and thus the action had to have accrued after September 23, 2015. However, plaintiffs' complaint avers that their damages arose from the April 25, 2014 water switch, and that public information regarding elevated blood lead levels and the related harm was published in the summer of 2015. Therefore, plaintiffs should have been aware of a possible cause of action no later than the summer of 2015, but their complaint was untimely filed in March 2016. Accordingly, the complaint should be dismissed for failure to provide statutory notice under MCL 600.6431.

Second, defendants argued that the Michigan Safe Drinking Water Act (MSDWA), MCL 325.1001 *et seq.*, preempts common-law claims falling within its scope and plaintiffs' claims for negligence and/or gross negligence are based on duties imposed by the MSDWA. Because only the Michigan Attorney General may bring a civil action to enforce the MSDWA, plaintiffs' common-law claims must be dismissed as preempted.

Third, defendants argued that they were entitled to governmental immunity with regard to plaintiffs' negligence claims because they were acting within the scope of their authority, while engaged in the exercise of the governmental function of regulatory oversight of the public water system, and their conduct was neither grossly negligent nor the proximate cause of injury. In

particular, defendants argued, they could not be held liable for ordinary negligence and plaintiffs' claims alleging gross negligence are not specific enough to give fair notice to each defendant as to their purported acts or omissions that caused damages. But in any case, plaintiffs did not set forth any conduct that rises to the level of gross negligence. And, defendants argued, plaintiffs failed to allege that as public employees they owed duties of care to the general public or that any gross negligence in the performance of those duties was the proximate cause of plaintiffs' injuries. Accordingly, defendants argued, they were entitled to summary disposition of plaintiffs' claims.

Plaintiffs responded to defendants' motion for summary disposition arguing, first, that plaintiffs complied with the statutory notice requirement set forth in MCL 600.6431. The only allegation in plaintiffs' complaint indicating that plaintiffs had notice of the basis of their lead poisoning claims was the October 1, 2015 declaration of a public health emergency by Genesee County—when the public was advised not to drink the water—and then plaintiffs filed their complaint within six months, on March 23, 2016.

Second, plaintiffs argued, the MSDWA does not preempt plaintiffs' common-law claims because there is no express legislative intent to do so and such common-law rights cannot be extinguished by implication. Further, the MSDWA is limited to setting standards related to public water supplies and provides for the MDEQ and the Attorney General to enforce those standards. There is no provision in the MSDWA either establishing a private right of action or abrogating a private right of action. It simply does not apply to this case seeking redress for injuries caused by tortious conduct.

Third, plaintiffs argued that the allegations in their complaint, accepted as true, stated actionable claims of gross negligence against these defendants. As stated in the complaint, defendants owed duties to plaintiffs that included, in brief: to ensure that lead-contaminated water was not provided to the public; to ensure proper corrosion control measures were taken; to properly inspect and test the water supply system to ensure it was safe; to properly act on information demonstrating contamination and unsafe water; and to timely warn the public of the unsafe water and dangers of the lead-contaminated water. Further, defendants breached their duties by, in brief: approving the water supply switch to the Flint River without proper corrosion control measures; failing to properly monitor and test the water; failing to act on knowledge and information that the water supply system was contaminated and unsafe; and by advising and representing to the public that the water was safe. Plaintiffs argued that their complaint was specific and detailed enough to apprise defendants of the claims against them and clearly set forth grossly negligent conduct that is actionable. Plaintiffs further argued that the determination whether defendants' conduct was the proximate cause of their injuries could not be made without additional evidence. Thus, defendants' motion for summary disposition should be denied.

Defendants replied to plaintiffs' response to their motion for summary disposition, arguing that they are clearly immune from any claims of ordinary negligence and the Court of Claims lacked jurisdiction over claims against them in their individual, rather than official, capacities. Further, defendants argued, plaintiffs' claims accrued when the water was switched in 2014, not later; thus, notice was insufficient. And, in any case, plaintiffs failed to state claims of gross negligence against defendants. Thus, they were entitled to summary disposition.

On June 13, 2018, the trial court issued its opinion and order on defendants' motion for summary disposition. First, the court concluded that all claims of ordinary negligence were, as a matter of law, barred by governmental immunity because it was undisputed that defendants were acting within the scope of their authority and were engaged in the exercise of a governmental function. Second, the court concluded that defendants were not entitled to summary disposition on the ground that plaintiffs failed to comply with MCL 600.6431, the statutory notice provision. Relying on this Court's reasoning in *Mays v Snyder*, 323 Mich App 1; 916 NW2d 227 (2018), the trial court held that plaintiffs should be given the opportunity to establish precisely when their distinct harms arose following a period of discovery.

Third, the trial court rejected defendants' argument that the MSDWA preempted plaintiffs' common-law claims which are permitted under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., and which are based on each individual defendant's conduct. The MSDWA is silent in this regard and such legislative intent may not be inferred from silence.

Fourth, the trial court concluded that plaintiffs' allegations of gross negligence are specific enough to give fair notice to each defendant as to their purported wrongdoing that caused damages and, further, that genuine issues of material fact existed as to whether defendants acted with a substantial lack of concern for whether an injury would result. Plaintiffs allege that both defendants Busch and Prysby assured the public, including plaintiffs, that the Flint drinking water was safe although they knew or should have known that such assurances were false or at least no more likely true than false. Plaintiffs also allege that Busch falsely reported to the EPA that Flint had enacted an optimized corrosion control plan. With regard to defendant Cook, plaintiffs allege that he was involved in the decision to allow Flint's water to be supplied without proper controls or testing and, although he had knowledge of the significant problems with the water quality through a detailed EPA report, Cook failed to act. The trial court concluded that, if plaintiffs prove these allegations against defendants, a jury could find that they acted without care for the safety and welfare of the Flint public.

Finally, the trial court concluded that, to the extent plaintiffs pursued claims against defendants in their "individual" capacities, such claims were rejected because it was undisputed that defendants' alleged wrongdoing arose from their respective government positions. Further, the court concluded that, as plaintiffs argued, the determination whether defendants' conduct was the proximate cause of their injuries could not be made on the insufficient record at that juncture. Thereafter, an order was entered granting defendants' motion for summary disposition as to claims of ordinary negligence and claims against defendants in the individual capacities, but denying the remainder of defendants' motion. This appeal by defendants followed.

Defendants first argue that plaintiffs failed to comply with the statutory notice provision, MCL 600.6431; thus, the trial court should have dismissed this case. We disagree. An issue of statutory interpretation, including whether MCL 600.6431 requires dismissal for failure to provide the requisite notice, is reviewed de novo. *McCahan v Brennan*, 492 Mich 730, 735-736; 822 NW2d 747 (2012).

MCL 600.6431 provides:
(1) No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of

claims either a written claim or a written notice of intention to file a claim . . . stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage . . . .

* * *

(3) In all actions for property damage or personal injuries, claimant shall file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action.

This statutory notice provision—and in particular the issue of when a claim accrues for its purposes—was considered in *Mays*, 323 Mich App at 25-45. This Court held that "a claim does not accrue until each element of the cause of action, including some form of damages, *exists*." *Id*. at 29. "Determination of the time at which plaintiffs' claims accrued therefore requires a determination of the time at which plaintiffs were first harmed." *Id*. Accordingly, the *Mays* Court held that, because it was "not clear on what date plaintiffs suffered actionable personal injuries as a result of their use and consumption of the contaminated water," they "should be permitted to conduct discovery and should be given the opportunity to prove the dates on which their distinct harms first arose before summary disposition may be appropriate." *Id*. at 29-30.

In this case, defendants argued that plaintiffs should have been aware of their possible causes of action no later than the summer of 2015, when public information regarding elevated blood lead levels and related harm was published; thus, plaintiffs' March 2016 complaint was untimely. However, as set forth in plaintiffs' complaint, until October 2015 the public was repeatedly reassured by the state and its agents like defendants that the water was not contaminated and was safe for consumption and use. It was not until the October 1, 2015 declaration of a public health emergency by Genesee County that the public was advised not to drink the water and thus, as plaintiffs argued, they had notice of the basis of their lead poisoning claims. Plaintiffs timely filed their complaint within six months of that announcement, on March 23, 2016. We agree with plaintiffs' argument and reject defendants claim that, in effect, plaintiffs should have ignored or mistrusted the state and government officials' repeated assurances that the water was safe and filed their lawsuit even before the water was publicly declared unsafe. To adopt defendants' argument would be tantamount to mandating an expectation that the government and its agents will lie and scheme to avoid liability—regardless of the threat to public health—which is clearly untenable. See *Mays*, 323 Mich App at 27-28, 36. And under the unique circumstances presented, we agree with the trial court that plaintiffs should be given the opportunity to establish when their distinct harms arose following a period of discovery. See *id*. at 28-30. That is, summary disposition on this ground would be premature in this case. Accordingly, we affirm the trial court's decision in this regard.

Next, defendants argue that the trial court erred in denying their motion for summary disposition on the ground that governmental immunity barred plaintiffs' gross negligence claims. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). Defendants moved for summary

disposition under MCR 2.116(C)(7) which tests whether a claim is barred by immunity. *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004) (citation omitted). "To survive such a motion, the plaintiff must allege facts justifying the application of an exception to governmental immunity." *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). The factual allegations set forth in the complaint are accepted as true "unless affidavits or other appropriate documents specifically contradict them." *Id*. The pleadings and documentary evidence must be construed in the light most favorable to the nonmoving party. *Herman*, 261 Mich App at 143-144. If a relevant factual dispute exists, summary disposition may not be granted. *Moraccini v Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012).

Defendants also moved for summary disposition under MCR 2.116(C)(8) which tests the legal sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id*. "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted).

Under MCL 691.1407 of the GTLA, governmental employees acting within the scope of their authority are generally entitled to immunity from tort liability unless their conduct amounts to gross negligence that is the proximate cause of the alleged injury or damage. MCL 691.1407(2)(c); *Tarlea v Crabtree*, 263 Mich App 80, 89; 687 NW2d 333 (2004). Gross negligence is specifically defined by the GTLA as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). As this Court noted in *Tarlea*, the definition suggests "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea*, 263 Mich App at 90. Moreover, this grossly negligent conduct must be *the* proximate cause of the plaintiffs' injuries, i.e., "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v City of Detroit*, 462 Mich 439, 458-459; 613 NW2d 307 (2000).

First, defendants argue that they owed no duty to plaintiffs upon which gross negligence claims can be based; thus, plaintiffs' gross negligence claims must fail. We disagree. A gross negligence claim is properly dismissed under MCR 2.116(C)(8) if the plaintiff fails to establish that the defendant owed the plaintiff a legal duty in tort. *Beaudrie v Henderson*, 465 Mich 124, 130; 631 NW2d 308 (2001); *Maiden*, 461 Mich at 135.

We note first that, contrary to plaintiffs' argument on appeal, defendants did raise this issue in the trial court but it was not addressed by the court. However, the trial court's failure to address an issue that was properly raised does not preclude our consideration of that issue. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). We may consider an issue that is necessary to a proper determination of the case, or an issue of law for which the necessary facts have been presented. *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). And the issue whether defendants owed plaintiffs an actionable legal duty presents a question of law for the court. See *Maiden*, 461 Mich at 131.

MCL 691.1407 does not create a cause of action; rather, a plaintiff must establish that a governmental employee defendant owed a common-law duty to the plaintiff. *Beaudrie*, 465 Mich at 139 n 12. "A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992). Generally, an individual has no duty to protect another who is endangered by a third person's conduct, but a duty of reasonable care may arise when there is a special relationship between the defendant and either the plaintiff or the third party causing the injury. *Bailey v Schaaf*, 494 Mich 595, 604; 835 NW2d 413 (2013); *Murdock v Higgins*, 208 Mich App 210, 214; 527 NW2d 1 (1994), affirmed 454 Mich 46 (1997). Whether a duty-imposing special relationship exists generally depends on "whether the plaintiff entrusted himself to the control and protection of the defendant, with a consequent loss of control to protect himself." *Murdock*, 208 Mich App at 215. Another consideration is the foreseeability of the risk. *Buczkowski v McKay*, 441 Mich 96, 101; 490 NW2d 330 (1992). In *Murdock*, this Court explained that, to determine whether an actionable duty exists in a particular case, it is necessary to:

> "balance the societal interests involved, the severity of the risk, the burden upon the defendant, the likelihood of occurrence, and the relationship between the parties. . . . Other factors which may give rise to a duty include the foreseeability of the [harm], the defendant's ability to comply with the proposed duty, the victim's inability to protect himself from the [harm], the costs of providing protection, and whether the plaintiff had bestowed some economic benefit on the defendant." [*Murdock*, 208 Mich App at 215, quoting *Dykema v Gus Macker Enterprises, Inc*, 196 Mich App 6, 9; 492 NW2d 472 (1992), quoting *Roberts v Pinkins*, 171 Mich App 648, 652-653; 430 NW2d 808 (1988); see also *Buczkowski*, 441 Mich at 100-102.]

In this case, defendants argue that as public employees of the MDEQ, they owed no duties to individual members of the public like plaintiffs in this case. We cannot agree. While the type of "special relationship" at issue here is not the type normally found in our caselaw, nonetheless, we conclude that plaintiffs properly alleged that a duty-imposing special relationship existed. Defendants, as key employees of the MDEQ, had a "special relationship" with the City of Flint which distributed the lead-poisoned water to plaintiffs and the existence of this relationship gave rise to defendants' duties to exercise reasonable care to protect plaintiffs from an unreasonable risk of harm.[2] See *Riddle*, 440 Mich at 96; *Murdock*, 208 Mich App at 214.

---

[2] Defendants are not entitled to application of the public duty doctrine, which generally applies to police officers on the ground that they owe a duty to the public in general and not to any specific individual. See, e.g., *Gazette v City of Pontiac*, 212 Mich App 162, 171; 536 NW2d 854 (1995). In *Beaudrie v Henderson*, 465 Mich 124, 134; 631 NW2d 308 (2001), our Supreme Court refused to expand the public duty doctrine, holding that the "liability of government employees, other than those who have allegedly failed to provide police protection, should be determined

Pursuant to the MSDWA, the MDEQ has "power and control over public water supplies and suppliers of water." MCL 325.1003. As employees of the MDEQ, defendants were charged with the duties to ensure that the water supply system serving the public in the City of Flint met federal, state, and other requirements so that it was safe to use and consume. Plaintiffs have alleged in their complaint that each defendant in this case played a critical role in the City of Flint distributing lead-poisoned water to its residents in the first place, and then allowed the City of Flint to continue to do so by failing to properly inspect, monitor, and test the water system, as well as timely and properly respond to information indicating that lead contaminated the water. As residents of the City of Flint, plaintiffs were dependent on—and justifiably relied upon—the water supply provided to them by the City of Flint, which was to be regulated by defendants. That is, plaintiffs clearly had no control over the public water supply system and relied on defendants to ensure that the City of Flint complied with the applicable laws for the protection of the public. See *Murdock*, 208 Mich App at 214-215. It is undisputed that lead-poisoned water poses an unreasonable risk of harm to persons using and consuming the contaminated water. Further, that unreasonable risk of harm was well-known and plaintiffs were persons who were readily identifiable as foreseeably endangered. See *Murdock v Higgins*, 454 Mich 46, 58; 559 NW2d 639 (1997) (citation omitted). Balancing the societal interests involved and severity of risk, including that lead-poisoned water causes death and/or permanent, irreversible brain damage in infants and children, as well as the burden on defendants—which was simply to perform their duties as required by their employment with the MDEQ—we conclude that defendants owed a legal duty to each plaintiff upon which gross negligence claims could be based.

Next, defendants argue that the trial court erred in holding that a genuine issue of material fact existed as to whether defendants' conduct could be considered grossly negligent. We disagree.

Generally, plaintiffs alleged in their complaint that defendants' egregious conduct included (1) permitting the City of Flint to distribute to its residents improperly treated water, which resulted in lead-contaminated water being used and consumed by unsuspecting residents; (2) ignoring or concealing information that the water was unsafe for use and consumption; (3) failing to properly act to confirm or remedy the contamination problem when it was revealed; (4) failing to stop the distribution of lead-contaminated water; and (5) failing to timely advise Flint residents, including plaintiffs, of the dangerous condition. More specifically, as the trial court noted, plaintiffs alleged that defendant Busch falsely reported to the EPA that Flint had enacted an optimized corrosion control plan; participated in MDEQ's repeated violations of federal water quality laws; failed to properly study and treat the Flint River water; participated in MDEQ's program of denials, lies, and attempts to discredit outside information; and provided false assurances to Flint residents, including plaintiffs, that the water was safe to consume although he knew or should have known that it was not. Plaintiffs also alleged that defendant Prysby participated in and approved the decision to switch the water source; failed to properly monitor

---

using traditional tort principles without regard to the defendant's status as a government employee."

and test the Flint River water; and provided false assurances to the Flint residents, including plaintiffs, that the water was safe to consume although he knew or should have known that it was not. Plaintiffs alleged that defendant Cook participated in and approved the decision to allow water to be delivered to Flint residents without corrosion control or proper study and testing. These allegations indicate that defendants' conduct not only created this public health crisis, but allowed it to perpetuate because of gross incompetence, obstructive conduct, and indifference for the health of Flint residents, including plaintiffs. In other words, we agree with the trial court that a reasonable juror could conclude that defendants' conduct was so "reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). An objective observer could reasonably conclude that defendants did not care about the health, safety, and welfare of Flint residents. See *Tarlea*, 263 Mich App at 90.

Finally, defendants argue that the trial court erred in holding that there was insufficient record evidence to make the determination whether defendants' conduct was the proximate cause of plaintiffs' injuries. We disagree.

As defendants argue, even if their conduct was grossly negligent, they are immune from liability unless that conduct was *the* proximate cause of plaintiffs' injuries, i.e., "the one most immediate, efficient, and direct cause." *Robinson*, 462 Mich at 462. However, as the trial court noted, in *Ray v Swager*, 501 Mich 52; 903 NW2d 366 (2017), our Supreme Court clarified the analysis required to determine whether a defendant's conduct is "the proximate cause" of an injury. In *Ray*, the defendant argued that he was entitled to governmental immunity and the issue was whether his conduct was "the proximate cause" of the plaintiff's injuries. *Id*. at 62-63. The *Ray* Court explained:

> Proximate cause is an essential element of a negligence claim. It involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. Proximate cause is distinct from cause in fact, also known as factual causation, which requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred. . . . In a negligence action, a plaintiff must establish both factual causation, i.e., the defendant's conduct in fact caused harm to the plaintiff, and legal causation, i.e., the harm caused to the plaintiff was the general kind of harm the defendant negligently risked. If factual causation cannot be established, then proximate cause, that is, legal causation, is no longer a relevant issue.

> We take this opportunity to clarify the role that factual and legal causation play when analyzing whether a defendant's conduct was 'the proximate cause' of a plaintiff's injuries under the GTLA. In any negligence case, including one involving a government actor's gross negligence, a court must determine whether 'the defendant's negligence was a cause in fact of the plaintiff's injuries . . . . But the court must also assess proximate cause, that is, legal causation, which requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim. A proper legal causation inquiry considers whether an actor should be held legally responsible for his or her conduct, which requires determining whether the actor's breach of a duty to the plaintiff was a proximate cause of the plaintiff's injury. It is not uncommon that more than one proximate

cause contributes to an injury. However, under the GTLA, we have held that when assessing whether a governmental employee was 'the proximate cause' of the plaintiff's injuries, a court must determine whether the defendant's conduct was the one most immediate, efficient, and direct cause of the injury[.] [*Id*. at 63-65 (quotation marks and footnoted citations omitted).]

In this case, we agree with the trial court that the issue whether defendants' conduct was the proximate cause of plaintiffs' injuries cannot be determined as a matter of law on the evidence of record. In brief, plaintiffs alleged in their complaint that defendants failed to prevent the City of Flint from distributing to its residents improperly treated water which ultimately became contaminated with lead; failed to timely discover that the water was unsafe through proper inspection, monitoring, and testing of the water system; failed to immediately act on information indicating that the water system was contaminated and unsafe; failed to immediately stop the distribution of lead contaminated water; and failed to timely advise Flint residents of the dangerous condition which resulted in serious injuries. If the evidence bears out plaintiffs' allegations that defendants' conduct in fact caused harm to plaintiffs, then it appears that the harm caused to plaintiffs—lead poisoning—is the general kind of harm that defendants' conduct foreseeably risked. See *Ray*, 501 Mich at 64, 81-82. In other words, defendants' conduct could be deemed the legal or "the proximate cause" of plaintiffs' injuries, i.e., the one most immediate, efficient, and direct cause of plaintiffs' injuries. See *id*. at 65. But, again, the evidentiary record is not sufficient at this time to make such a determination. Thus, defendants' argument is without merit.

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly