*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HASSAN HACHEM,

        Plaintiff-Appellant,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant,

and

CHADY ACHKAR, and AUTO KING SALES,
INC.,

        Defendants-Appellees.

UNPUBLISHED
March 11, 2026
12:05 PM

No. 373445
Wayne Circuit Court
LC No. 22-014454-NF

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

In this negligence action, plaintiff Hachem Hassan appeals by right the September 24, 2024 order granting summary disposition in favor of third-party defendants Chady Achkar and Auto Sales King, Inc.[1] Plaintiff's claims against defendants include negligence, excess wage loss,[2] and promissory estoppel following an injury plaintiff sustained while climbing on defendants' car trailer. On appeal, plaintiff argues that the trial court erred (1) by determining that defendants

---

[1] Defendant Progressive Marathon Insurance Company is the highest-priority no-fault insurer for plaintiff. Plaintiff had already resolved his first-party personal protection insurance claim against Progressive at the time of defendants' motion for summary disposition, and Progressive is not a party to this appeal.

[2] This count is for owner's liability and alleges many types of damages. In the relevant proceedings, the parties focused on the allegation of excess wage loss.

lacked a duty to protect plaintiff from injury, (2) by dismissing plaintiff's claim of promissory estoppel without giving him notice and an opportunity to be heard, and (3) by dismissing plaintiff's excess wage loss claim. We affirm.

## I. BACKGROUND

At the time of the accident, plaintiff owned and worked as an auto mechanic at Hy-Tech Auto Sales in Detroit. Plaintiff testified that on September 4, 2020, Achkar arrived at his shop after it was closed for the day. Achkar had purchased some vehicles at an auction and wanted plaintiff to inspect them to determine whether any repairs were necessary. Plaintiff told Achkar that he was leaving so he could not look at the cars, but Achkar insisted. Eventually, plaintiff acquiesced to Achkar's requests and agreed to inspect the cars. Plaintiff and Achkar approached the two-story car trailer, which was parked on the street by plaintiff's shop. Plaintiff first examined the cars on the bottom of the trailer and described some visible damage. Plaintiff then told Achkar that he could not inspect the car on the top of the trailer. However, Achkar "kept saying, please, look at it, please." Achkar assured plaintiff that he would "be okay" and that "nothing would happen." Achkar even added "inshallah," which is an Arabic term that plaintiff understands to mean "hopefully" or "God willing."

Plaintiff eventually agreed to climb onto the trailer. He "took a step on the bumper," "climbed on the trailer," and "landed right there on top." However, before plaintiff was able to get to the car that he was supposed to inspect, "something happened, and [he] just went totally down inside the trailer, between the cars . . . ." Plaintiff testified that he had "no idea" what caused him to fall, but he hit his head and hurt his arm. He was taken to Garden City Hospital and was eventually treated for multiple injuries, including a broken arm, a right shoulder crush, a blood clot, and pain in his neck, back, groin, and right knee.

Plaintiff did not return to work after the accident; in fact, his business was shut down by the State of Michigan a few months later for reasons unimportant here. Plaintiff did not look for other work because he stated that he could not be active for long periods of time, and his family doctor "disabled" him from working.

In December 2022, plaintiff sued Progressive as the highest-priority no-fault insurer seeking personal protection insurance (PIP) benefits. Plaintiff also included claims against defendants, as owners of the car trailer, for negligence, owner's liability for excess wage loss, and promissory estoppel. In June 2024, defendants moved in the trial court for summary disposition under MCR 2.116(C)(10), arguing that defendants owed no duty to plaintiff, such that they could not be liable for his injuries or his wage loss. Defendants requested that the trial court dismiss plaintiff's claims in their entirety and with prejudice.

During a succinct motion hearing, the parties discussed whether defendants owed a duty to plaintiff based on Achkar's statements and assurances. The trial court determined that defendants did not owe plaintiff a duty and that plaintiff's negligence claim failed as a matter of law. The trial court also determined that "plaintiff brought forth no evidence to support his claim for excess wage loss either." The trial court did not address plaintiff's claim for promissory estoppel on the record, except in the sense that the trial court granted defendant's motion to dispose of all of

-2-

plaintiff's claims with prejudice. Plaintiff filed a motion for reconsideration, which the trial court denied.

Plaintiff now appeals.

## II. NEGLIGENCE CLAIM

### A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) examines the factual sufficiency of a claim. *Id*. Summary disposition should be granted under MCR 2.116(C)(10) when the evidence reveals no genuine issue of material fact. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

When reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a court must examine the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties and, considering both direct and circumstantial evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, determine whether a genuine issue of material fact exists. MCR 2.116(G)(5).

Finally, as relevant to our analysis of plaintiff's arguments in his claim for negligence, "[w]hether a defendant owes a particular plaintiff a duty is a question of law that this Court reviews de novo." *Mercurio v Huntington Nat'l Bank*, 347 Mich App 662, 672; 16 NW3d 748 (2023), quoting *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013).

### B. ANALYSIS

Plaintiff argues that Achkar's words and actions created a risk of foreseeable harm to plaintiff, such that defendants had a duty to protect him from falling off the trailer. Alternatively, plaintiff asserts that the parties had a special relationship that created such a duty. We disagree.

To establish a claim premised on common law negligence, a plaintiff must prove: (1) the defendant owed the plaintiff a duty, (2) the defendant breached the duty, (3) the plaintiff suffered damages, and (4) the defendant's breach proximately caused the plaintiff's damages. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). It is axiomatic that there can be no liability for negligence when the defendant owed no duty to the plaintiff. See *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012). In determining whether a duty exists, courts look to different variables, including the (1) foreseeability of the harm, (2) degree of certainty of injury, (3) existence of a relationship between the parties involved, (4) closeness of connection between the conduct and injury, (5) moral blame attached to the conduct, (6) policy of preventing future harm, and (7) the burdens and consequences of imposing a duty and the resulting liability for breach. *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110-111; 1 NW3d 44 (2023), citing *Buczkowski v McKay*, 441 Mich 96, 101, n 4; 490 NW2d 330 (1992) and *Prosser & Keeton, Torts* (5th ed), § 53, p 359, n 24. The Supreme Court has recognized that the two most important factors are the relationship of the parties and the

foreseeability of the harm. *Hill*, 492 Mich at 661. The mere fact that an event may be foreseeable, however, is insufficient to impose a duty upon a defendant. *Buczkowski*, 441 Mich at 101-103.

Although a person has no common law duty to intervene to protect another from harm, a person does have a common law duty to refrain from acting in a way that foreseeably increases the danger to another. See *Hill*, 492 Mich at 671-672 (recognizing that the common law imposes liability when a party creates a new hazard or increases the danger from an existing hazard); *Dumka v Quaderer*, 151 Mich App 68, 75; 390 NW2d 200 (1986) (stating "[e]ven where there is no duty to aid a person in peril, there is a duty to avoid affirmative acts which make the situation worse").

Likewise, under Michigan's common law, there are also certain special relationships that give rise to a duty to aid or protect another from foreseeable harm. *Dawe v Dr Reuven Bar-Levav & Assoc*, *PC*, 485 Mich 20, 25-26; 780 NW2d 272 (2010). For example, "a common carrier may be obligated to protect its passengers, an innkeeper his guests, and an employer his employees." *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988). Courts impose a duty on certain persons in these special relationships, generally, because one party to the relationship has relinquished control to the other. See *id*. "The duty to protect is imposed upon the person in control because he is best able to provide a place of safety." *Id*. Accordingly, when determining whether to recognize a special relationship, courts examine whether the plaintiff entrusted himself to the defendant's control and protection, "with a consequent loss of control" to protect himself. See *Murdock v Higgins*, 208 Mich App 210, 215; 527 NW2d 1 (1994).

Defendants in the present case are not in an existing category of special relationships (e.g., a common carrier or plaintiff's employer). Nor could we find any legal basis for recognizing a new special relationship based on defendants' level of control over plaintiff. See *Murdock*, 208 Mich App at 215. The nature of the relationship appears to be a casual business relationship, in which Achkar occasionally pays plaintiff to repair his cars. And plaintiff's testimony establishes that Achkar, although a persistent customer, had no actual control over plaintiff.

Plaintiff testified that he did not want to climb on the trailer to inspect the car, stating "I'm on blood thinners, I was not hurting myself, I won't do it." Plaintiff had never climbed on that particular trailer, but he had climbed on a few other tow trucks or flatbed trailers. Plaintiff further testified that it "definitely" would have been much safer for him to inspect the car on the ground than on the trailer. However, plaintiff asserted that Achkar promised him that he would be safe and said: "You'll [be] okay. I'm right behind you. Nothing will happen." Plaintiff testified that he "figured" that Achkar "would either guide [plaintiff] to a step," or "if plaintiff stepped somewhere wrong, [Achkar] would have told [plaintiff], helped [plaintiff,] or something." Plaintiff conceded that Achkar did not physically force him to inspect the cars or climb on the trailer, but Achkar repeatedly asked him to and stayed "very very very persistent." Plaintiff stated that he climbed on the trailer because "it was to a point where I'm like, okay, let me look at this thing for him because he's just not going to leave me alone."

Neither Achkar's statements nor the parties' relationship created a legal duty to plaintiff. As noted, Achkar did not force plaintiff to climb on the trailer. Additionally, Achkar's statements that "nothing will happen," "I'll be right behind you," and "you'll be okay" are not legally significant. Although possibly soothing to plaintiff, these phrases do not demonstrate Achkar's control over plaintiff, such that Achkar became best positioned to provide for plaintiff's safety.

See *Williams*, 429 Mich at 499. To the contrary, plaintiff was able to protect himself from harm by not climbing on the trailer. See *Murdock*, 208 Mich App at 215. Plaintiff's own statements show that he understood the risk to his safety by climbing onto the trailer, but he willingly (albeit grudgingly) decided to take that risk so that Achkar would "leave him alone."

Plaintiff's testimony also indicates that he may have *assumed* that Achkar had some special knowledge or expertise that could prevent a fall or injury, but that assumption is not supported. Achkar's vague reassurances that he would be "right behind" plaintiff and that plaintiff "hopefully" would be fine, did not demonstrate any special knowledge about the trailer and how to most safely climb it. And whether Achkar asked plaintiff to climb the trailer or plaintiff volunteered to do so, the foreseeable risk of falling and the degree of certainty of injury was the same. In other words, neither Achkar's words nor actions increased the foreseeable risk of harm that would occur from climbing on a car trailer. See *Kandil-Elsayed*, 512 Mich at 110.

Finally, although Achkar may have made statements accepting fault for plaintiff's fall, Achkar's willingness to take moral blame does not confirm the existence of a legal duty. Moral blame is one factor to consider when determining whether to impose a duty, but moral blame must be "attached to the conduct." *Id*. In other words, moral blame refers to the objective moral culpability of the defendant's conduct, not the defendant's subjective, after-the-fact statements about responsibility. Accordingly, if defendant did not owe plaintiff a duty of care, then defendant's statements after the fact do not operate to retroactively impose liability. As discussed, Achkar's insistent requests to inspect the car and his vague statements about plaintiff's safety did not create a legal duty. Achkar's statements accepting blame for plaintiff's fall do not change that conclusion.

In sum, although Achkar may have been dogged with his requests for inspection and made ambiguous comments that plaintiff would be "okay," Achkar did not create a danger for plaintiff or control plaintiff's safety. For these reasons, we conclude that defendants had no duty to plaintiff to protect him from falling off the car trailer, and the trial court did not err by dismissing plaintiff's claim of negligence.

## III. PROMISSORY ESTOPPEL CLAIM

"In civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (quotation marks and citation omitted). "[S]o long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). However, a "moving party must show that the same basis for the error claimed on appeal was brought to the trial court's attention." *Tolas*, 347 Mich App at 289. "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Id*.

In this case, although plaintiff moved in the trial court for reconsideration, plaintiff did not base his motion on a claim that the trial court violated his right to due process. Plaintiff argued that "palpable error occurred when . . . there was no treatment or record made as to Plaintiff's promissory estoppel claim." Plaintiff did not raise a due-process violation until he appealed in this Court. For these reasons, plaintiff's due-process claim is not preserved, and we decline to exercise our discretion to overlook the preservation requirements. See *id*. at 289-290.

IV.  EXCESS WAGE LOSS CLAIM

Finally, plaintiff argues that he provided sufficient evidence to create a question of material fact that his injuries directly caused a loss of income that exceeds his typical earnings.  We disagree.

The standard of review is the same as previously stated, which is that we review de novo a trial court's decision on a motion for summary disposition.  *El-Khalil, Inc*, 504 Mich at 159, and that summary disposition should be granted when the evidence reveals no genuine issue of material fact.  *West*, 469 Mich at 183.

Under the no-fault automobile insurance act, MCL 500.3101 *et seq*., insurance companies are required to provide first-party PIP benefits for certain expenses and losses.  MCL 500.3107; MCL 500.3108.  In particular, PIP benefits cover work loss "consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident."  MCL 500.3107(1)(b).  For economic losses exceeding these statutory limits, MCL 500.3135(1); (3)(c) preserves tort liability against negligent defendants.

As discussed, the trial court correctly determined that defendants were not negligent.  Further, plaintiff did not substantiate his claims of excess wage loss.  Plaintiff testified that his lost earnings per year are $160,000.  However, the tax documents in the record indicate that plaintiff's total annual income in 2019, 2020, 2021, and 2022 was consistently under $20,000.  Moreover, plaintiff admitted that he received Medicaid before the accident, which indicates that his income must have been at or below 133% of the federal poverty level (about $18,000 for a single person or $37,000 for a family of four).[3]  Accordingly, the record does not support that a genuine dispute of material fact exists that plaintiff suffered excess wage loss as a result of defendants' negligence, and summary disposition of this claim was appropriate.  See *West*, 469 Mich at 183.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

---

[3] These are the income eligibility requirements for the Healthy Michigan Plan, which is a category of eligibility for Medicaid.  See <https://www.michigan.gov/healthymiplan/who> (accessed March 10, 2026).